Robert Edgar **CHANNEL**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16879.

United States Court of Appeals
Ninth Circuit.

Dec. 7, 1960.

---

Bernard P. McCullough, San Francisco, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Robert J. Jensen, Russell R. Hermann, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BONE, HAMLEY and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge.

Robert Edgar Channel appeals from a judgment convicting him under counts one, three and five of an indictment charging violations of the Narcotic Drugs Import and Export Act of 1956, 21 U.S.C.A. § 174. He contends here that the trial court erred in denying his motion under rule 41(e) (1), Federal Rules of Criminal Procedure, 18 U.S. C.A., to suppress certain evidence allegedly obtained as the result of an illegal search and seizure.

A package containing twenty-three grains of heroin found in Channel's apartment during a search without warrant was received in evidence over objection. This evidence is the subject matter of count five of the indictment charging

him with possession of this quantity of narcotic drugs. It is also part of the subject matter of count one charging him and one George Washington Searls III with conspiring to receive, conceal and sell narcotic drugs, including the twenty-three grains referred to above. While these twenty-three grains are not directly involved in count three, Channel contends that under the circumstances the reception of this evidence also prejudiced him with regard to that count.

Agents of the Federal Bureau of Narcotics placed Channel under arrest in a Los Angeles parking lot about 11:00 a. m. on September 26, 1958. The agents made a display of firearms, handcuffed Channel and took him to an office of the Bureau where he was questioned for thirty to forty-five minutes. Two of the agents then went to Channel's apartment, gaining entrance with a key obtained from the owner of the building. During their search of the apartment for which no search warrant had been obtained, the agents found the twenty-three grains of heroin. While the search was in progress, Channel remained in the custody of the agents at the Bureau office.

The Government contends that a search warrant was not necessary because Channel consented to the search. In support of this position, the Government relies upon the testimony of two agents who participated in the interrogation. Their accounts of statements by Channel allegedly granting his consent to the search were given at the hearing on the motion to suppress evidence.

One of these agents was Billie N. Walton. He testified that during his questioning prior to the search Channel said, "I have no stuff in my apartment and you are welcome to go search the whole place." Walton testified that the agents then asked Channel where the key to his apartment was and that Channel replied he did not have one but his wife and the landlord had keys. Walton further testified that Channel suggested they might contact one of those persons through the superintendent and gave them directions to reach his residence.

The second agent who testified at the hearing was Lee Bennett. He gave this testimony relevant to our present inquiry:

"A. * * * [I]n answer to a question of mine * * * Well, it was more of an inference than a question. I said, 'You probably have more stuff at your apartment.' He said, 'No, my apartment is clean. There is nothing there. You can go out and search the place.' At that time I picked up some keys off the table, which had been taken from his person, and I said, 'This doesn't look like a house key.' He said, 'No, the house key isn't there. You will have to see the super, but he will let you in.' He mentioned how to find the super, he was in the back, and so forth. * * * Q. Did you at any time get this alleged consent in writing? A. No, sir. Q. To your knowledge did any of your brother officers? A. No, I don't think so."

Bennett testified that neither he nor anyone in his presence had asked Channel if the agents might search his room. He further stated that Channel was never told they were going to search his residence.

Appellant Channel testified that when the searching of his apartment was being discussed, Bennett, Walton and another officer were in the room. Channel first testified that he said "no" when Walton asked for permission to search the apartment, and later reiterated that "they" had requested permission and that he had declined. Still later Channel testified that he refused Bennett permission to search the apartment. Channel stated that he believed he was still handcuffed at the time this interrogation took place.

■ A search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied. The Government has the burden of proving by

clear and positive evidence that such consent was given. Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649, 650.

The order of the trial court denying the motion to suppress represents a finding of fact to the effect that Channel gave his unequivocal and specific consent to search his apartment and that such consent was not the result of duress or coercion. It is therefore apparent at the outset that the trial judge accepted the testimony of agents Walton and Bennett and rejected that of Channel. In so far as this involved an evaluation of credibility, we are not in a position to hold that the trial court erred in this regard. In re Fried, 2 Cir., 161 F.2d 453, 1 A.L.R. 2d 996.

But the relative credibility of witnesses is not the central issue. The real question presented here is whether the testimony of Walton and Bennett, taken at full value, warrants a finding that Channel freely and intelligently gave his unequivocal and specific consent to the search.

Channel's words of purported consent, as testified to by one Government witness, were, "I have no stuff in my apartment and you are welcome to go search the whole place." As testified to by the other Government witness, they were, "No, my apartment is clean. There is nothing there. You can go out and search the place." These appear to be no more specific and unequivocal words of consent than those uttered by the defendant in Judd, which the court there summarized as, "I have nothing to hide, you can go there and see for yourself."

Holding that such a statement made by a defendant in jail did not meet the test referred to above, the court said in Judd:

" * * * Conceivably, that is the calm statement of an innocent man; conceivably, again, it is but the false bravado of the small-time criminal. But, however it be characterized, it hardly establishes willing agreement that the officers search the household without first procuring a warrant. Comparable statements have been held insufficient where the victim of the search was safely in his home, his place of business, or in his automobile. Surely they acquire no more force when procured under the circumstances here present * *." 190 F.2d at page 651.

It is true that in Judd the court also noted that one of the officers who made the search interpreted Judd's words as giving consent to "go in" his home but not consent "to search it." But what Judd actually said, "You can go there and see for yourself," seems as much to contemplate a search as Channel's words, "You can go out and search the place."

In neither case was there any specific statement by the defendant that the search could be made without a warrant. If this element may be supplied by inference it could be said that since consent was not needed to search with a warrant, Channel must have intended to permit a search without a warrant. But an equally permissible inference, as the court points out in Judd, is that the words were not designed to give consent at all but only evidenced false bravado. In view of this choice of inferences it cannot be said that the consent to search without a warrant was specific and unequivocal.

In an important particular this is a stronger case for the defendant than was Judd. The Government relied in the Judd case solely on statements made while the defendant was in jail, but Judd also accompanied the officers to his room, was well aware of the fact that they were going there, and asserted no objection at that time. Channel, according to agent Bennett's testimony, was never told that his residence was to be searched and thus was not even provided an opportunity to object. He remained in jail unaware of the search at the time it was in progress.

This is also a stronger case for the defendant than was Higgins v. United States, 93 U.S.App.D.C. 340, 209 F.2d 819. In that case it was shown that officers searched the room of defendant in his presence and before his arrest. The

officers testified defendant gave permission when they asked whether they could look around his room; defendant claimed his room was searched without permission asked or given. The court said that, even assuming the officers' testimony to be true and defendant's false, the record would not support a finding of consent:

"Words or acts that would show consent in some circumstances do not show it in others * * *. But no sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered. It follows that * * * words or signs of acquiescence in the search, accompanied by denial of guilt, do not show consent; at least in the absence of some extraordinary circumstance, such as ignorance that contraband is present." 209 F.2d at page 820.

While the parties cite many other court decisions, it appears to us that Judd, which the Government characterizes as the "leading" case, and Higgins are factually closer to the instant case than any of the other decisions.[1]

■ We hold that Channel did not freely and intelligently give his unequivocal and specific consent to the search without a warrant.[2] It is therefore nec-essary to reverse the convictions on counts one and five, each of which involved the twenty-three grains of heroin found during this search, and to remand for a new trial as to those counts.

Appellant argues that the error with respect to the admission in evidence of these twenty-three grains of heroin also prejudiced him as to count three of which he was also convicted. In that count he and Searls were charged with knowingly and unlawfully selling and facilitating the sale of one ounce, 185 grains of heroin.

Appellant contends that the only evidence tying Channel in with the count three violation is the testimony of a Government agent that at the time the sale took place Searls told him that his "partner" Channel was following. It is argued that this evidence is inadmissible because the existence of a conspiracy between Searls and Channel had not first been established by other independent evidence.

■ Count three is not a conspiracy count, and in any event no objection was taken to the question which elicited the agent's testimony quoted above. Moreover, there was ample testimony independent of that given by the Government agent which if believed would warrant a finding of Channel's guilt under count

---

1. The facts crucial to the finding of a valid search in each of the cases cited by the Government are distinguishable from the facts before us in the record of the Channel case. In United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 89, 88 L. Ed. 1140, it was held that the circumstances did allow the finding of consent when a valid confession preceded permission to the search. In United States v. MacLeod, 7 Cir., 207 F.2d 853, there was substantial support for the court's finding of consent where there was an express consent to the search and seizure with every indication that it was knowingly made. Not only did defendants consent, but they assisted the agents in making the search. In Ruhl v. United States, 10 Cir., 148 F.2d 173, heavily relied upon by the Government, the defendant was also present during the search.

2. That the trial court initially had some misgivings as to the validity of the search is indicated by this statement made by the court at the conclusion of the hearing on the motion to suppress:

"I might say that considering the supposed permission claimed to be given and the search made on a Friday, which is not a legal holiday, it would certainly avoid a lot of controversy if agents would bother to get out a search warrant. A search warrant is certainly advocated by the law books. It is rarely used in practice.

"There are many cases in which the courts grant motions to suppress because of the weighing of contradictory evidence on motions of this kind that establishes that the search was irregular."

three. Most of this testimony came from codefendant Searls, but a codefendant may testify as a witness for the Government. Brown v. United States, 5 Cir., 253 F.2d 587.[3]

■ Notwithstanding what is said above, it is our view that reception in evidence of the twenty-three grains of heroin obtained by the unlawful search and the testimony pertaining to its seizure so contaminated the trial as a whole that the verdict as to count three involving different heroin consisting of one ounce, 185 grains is rendered suspect. Searls testified that he gave a package of heroin to Channel to conceal in his home and that he later returned and had Channel give him one ounce, 185 grains from this package for the sale involved in count three. Thus the seizure of the remaining twenty-three grains at Channel's home tended to corroborate Searls' testimony linking Channel to the one ounce, 185 grains. We are unable to say that this corroboration was not a decisive factor in obtaining a verdict of guilty on count three.[4]

We conclude that the erroneous admission in evidence of the twenty-three grains of heroin prejudiced Channel with respect to count three and requires a reversal and remand as to that count.[5]

Reversed and remanded for a new trial as to counts one, three and five.

---

3. Consistent with the rule announced in Doherty v. United States, 9 Cir., 230 F. 2d 605, the court in the instant case instructed the jury that the testimony of an accomplice, although not incompetent, is to be weighed and scrutinized with great care. The jury was further instructed that if the testimony of an accomplice is not corroborated by other competent evidence "it should not be relied upon, unless, notwithstanding the fact that it stands alone, it produces in the minds of the jury a full and positive conviction of its truth. * * *"

4. The weakness of Searls' testimony if uncorroborated is demonstrated by the following statement made by him while on the witness stand:

"Q. You don't recall that he ever made a statement of that kind? A. No, I don't remember. Q. Pardon me? A. I don't really remember. It has been a long time ago, and there's a lot of things I don't remember. I don't remember everything that happened, to be exact. There's a lot of things that is left out, and there's a lot of things, like I said, that are left out that I don't remember; things that would probably be of much value to the court."

5. Were it not for the error as to count three, we would have affirmed without examining the questions concerning counts one and five, since equal and concurrent sentences were given on all three counts. See Fuentes v. United States, 9 Cir., 283 F.2d 537.