Albert H. Bosch, J.
The defendant, Kathleen Oolletti, together with three other defendants, was indicted for murder in the first degree, under Indictment No. 821-61, and robbery in the first degree (armed), grand larceny in the first degree, assault in the second degree, carrying a dangerous weapon as a felony, and conspiracy to commit robbery in the first degree, under Indictment No. 822-61,
A motion was made by the defendant, Kathleen Oolletti, for an order suppressing the product of a search of the dwelling and contents thereof of said defendant, at 309 Wilson Avenue, Brooklyn, made on the 11th day of May, 1961, on the ground that such search was unlawful, or, in the alternative, that the search was unreasonable and in violation of the said defendant’s con *196 stitutional rights, and for such other and further relief as this court may deem just.
In the supporting affidavit executed by the attorney for the defendant, Kathleen Colletti, it was contended that she was accosted and detained by detectives of the New York City Police Department some distance away from her home and she was compelled to accompany them across the street and into her premises, where they searched “ every nook and cranny in the house and every item of clothing therein ’ ’, and that certain items were removed by the members of the Police Department without a search warrant, probable cause, or the defendant’s consent; it was against her will, and was effected through sheer force and coercion.
The factual issues raised by this motion required a hearing by the court, which was held January 26, 1962.
At this point the court wishes to call attention that the search and seizure took place on May 11,1961, at which time the courts of the State of New York followed People v. Defore (242 N. Y. 13 [1926]). In June, 1961, the Supreme Court of the United States handed down its decision in Mapp v. Ohio (367 U. S. 643). This decision is binding on all State courts, and all matters pertaining to illegal search and seizure presented to a court subsequent to June, 1961 must be guided by this mandate.
Upon the hearing, the court directed that it be limited to facts and circumstances surrounding the original arrest and the time of the arrest and the alleged seizure in the apartment of the defendant, Kathleen Colletti.
The defendant, Kathleen Colletti, testified that upon leaving a bakery, which was some distance from her home, a number of police officers drew up in a car, got out, exhibited their badges, and told her to come with them. They accompanied her across the street to the vestibule of the house in which she lived, had her open the door and went upstairs one flight, where they directed her to open the door, which she did, and they “ nudged ” her in first, at which time they had their guns drawn. The defendant, Kathleen Colletti, denied inviting them into her apartment to look around and testified that as a matter of fact they never asked permission to go in. After entering the apartment, they quickly searched it and thereafter made a thorough search of her clothes, furniture, and the contents of a garbage pail from which they removed a piece of paper, which is the subject matter which the defendant, Kathleen Colletti, seeks to suppress. This, in substance, was the defendant’s, Kathleen Colletti, testimony.
*197 A detective of the New York City Police Department testified on behalf of the People and stated that one detective approached the defendant upon her leaving the bakery, that he took his shield out, and then they walked around a corner out of sight where the witness joined them; that they questioned the defendant whether there was anyone in her apartment and that she denied there was, stating they could come up and look; that they then accompanied the defendant to 309 Wilson Avenue, Brooklyn, the home of the defendant, and they requested the keys from the defendant for the purpose of going into her apartment, as they were afraid there might be a shooting.
The witness, in part, testified in answer to the following question:
Question: “ Now, tell us what you did when you arrived at these premises? ”
Answer: “As we entered the doorway, I turned to Kathleen and I said, ‘ You’d better give me the keys if we’re going into your apartment. ’ I was afraid there might be a shooting up there. We walked up the stairs. One of the officers with me took Kathleen down the hall where she would be out of the line of fire, because we felt strongly that we would encounter gunfire if there was anyone in the premises.
“ I then opened the door with the key that Kathleen had given to me. We entered. We had drawn our guns. We looked over the apartment quickly. We observed there was no one in it. So, at this time Detective Farley (phonetic) asked Kathleen Colletti if there was any guns in the apartment.”
He then related how he had found in a garbage bag in the kitchen several rumpled pieces of paper and on one of them he noticed a diagram, which was a likeness to the premises in which the alleged crimes were committed. That upon questioning the defendant, Kathleen Colletti, if this was a drawing of the said premises, she hung her head and refused to answer.
On cross-examination, the following question was asked of the detective and answer given:
Question: “Were there any other personnel of the Department of Police present?”
Answer: “We had others in the street; we had the apartment, the side streets and the rear, we had them covered in case we had trouble there.”
Thereafter the detective testified as follows as a result of this question:
Question: ‘ ‘ She was free to come and go as she would please, is that what you mean to tell us? ”
*198 Answer: “As a result of the information I had obtained concerning Kathleen Oolletti, I would not have let her go.”
It was testified that the police officers had never had a warrant of arrest nor a search warrant, and that they (the police) suspected somebody was in the apartment and that was the reason for the drawn guns and the searching of the apartment. If this was so, they could search for some one and not some thing.
On rebuttal, the court asked the following questions :
The Court: “ Miss Oolletti, were you placed under arrest on this occasion? [referring to the time she was stopped on leaving the bakery].”
Answer: “ They didn’t use the word ‘ arrest ’, but they told me to come along with them. They showed me a badge and says [sic] ‘ come along with us ’.”
The Court: “ Did anyone say that you were under arrest? ”
Answer; “No, they didn’t.’’
The Court: “Did anyone say that you were under arrest subsequent to this occasion, at the police station or anywhere else? ”
Answer: “ They just took me with them.”
The Court: “ Did they detain you? ”
Answer: ‘ ‘ They held me. ’ ’
Question by Defense Counsel: * ‘ One more question: From the time that you were first accosted, approached by these men, from that time on you remained in their custody, is that correct?”
Answer: “ That’s correct.”
The People argue that consent was given by the defendant, Kathleen Colletti, to search her apartment, and further urge that the slip of paper was ‘ ‘ abandoned ’ ’ by the defendant by reason of her throwing it into the garbage pail.
The court finds that at the time the defendant, Kathleen Colletti, was approached at the entrance of the bakery she was arrested. Section 167 of the Code of Criminal Procedure defines arrest as follows: ‘ ‘ Arrest is the taking of a person into custody that he may be held to answer for a crime.” (People v. Gallo, 207 Misc. 161 [1955].) The law is quite clear that where a person is arrested at some distance from his home, the arresting officers have no right to search the premises of the person arrested without a search warrant. (Agnello v. United States, 269 U. S. 20.)
The People have the burden of proof by clear and positive evidence that a consent to search was given. (Amos v. United States, 255 U. S. 313; Charnel v. United States, 285 F. 2d 217; *199 Judd v. United States, 190 F. 2d 649.) Submission to authority is not consent and one faced with authority has the right to submit and reserve his defense for the court. (Johnson v. United States, 333 U. S. 10; United States v. Evans, 194 F. Supp. 90.)
The court finds that this defendant did not freely and voluntarily give her consent to the search of her premises.
The People urge the court that this piece of paper was “ abandoned ” by reason of its being thrown away in the garbage can. They base this by reason of the answer of the defendant to the following question by the Assistant District Attorney:
Question: “ You threw it away, Mrs. Colletti, because you had no further use for it, right? ”
Answer: “ Yes.”
Question: “ You throw anything in the garbage pail because you have no further use for it? ”
Answer: “Yes.”
Question: “ And that’s the reason you threw this piece of paper? ”
Answer: “ Yes.”
The People contend that this testimony brings the case under Abel v. United States (362 U. S. 217 [I960]). The People are mistaken in their interpretation of this case as it relates to Abel v. United States (supra). In the Abel case a search was made by the F. B. I. of a hotel room after the defendant had vacated it and paid his bill. The search was conducted with the consent of the proprietor of the hotel to search the vacated room where they seized certain items. The Supreme Court of the United States held that these items were admissible by reason of the fact that at the time of the search the petitioner Abel had vacated the room and the hotel and that the hotel had exclusive right to its possession and had freely given its consent to the search. Under those conditions the contents of the wastepaper basket wherein the two items were found had been thrown away by the petitioner Abel and abandoned by him.
In this case, the defendant, Kathleen Colletti, was the tenant in the apartment and exercised the complete control and domain over its contents, and there was no “ abandonment ” by her in throwing the articles into a garbage pail, which were still in the said apartment.
Furthermore, from the testimony of the detective, it is quite clear that in having the house “ staked out ” they had the additional time to secure a search warrant if they believed one was necessary.
*200 For the foregoing reasons, the motion by the defendant, Kathleen Oolletti, to suppress the product of the search of the dwelling of the defendant, Kathleen Oolletti, is granted and the District Attorney is directed to return this item to the defendant.