Lyman H. Smith, J.
The defendant has been indicted by a Grand Jury of Monroe County (Indictment No. 14, filed Jan. 11, 1966) in two counts, charging him under the first count with a violation of subdivision 2 of section 1897 of the Penal Law (felonious possession of a loaded firearm without a license) and in the second count, with the crime of assault in the second degree in violation of subdivision 4 of section 242 of the Penal Law.
This is a motion by the defendant for an order pursuant to section 813-c of the Code of Criminal Procedure to suppress certain evidence purportedly wrongfully seized. A full hearing has been held and the facts and circumstances adduced therefrom may be summarized as follows.
Acting on radioed information of an alleged assault (or attempted assault) with a gun, two police officers proceeded by patrol car to 53 Concord Street in the City of Eochester at about 3:40 o’clock in the afternoon of December 23, 1965 where they briefly interviewed, two alleged complainants. They then *562 proceeded to No. 47 Concord Street at which address the defendant resided. It was established the defendant occupied one room on the south side of a double-frame house fronted by a porch and from which porch a door led directly into the defendant’s one-room apartment. Upon the hearing both of the police officers testified in substance that one of them (officer Kline) knocked on a screen door to attract the attention of the occupant; that the inner (wooden) door was opened by the defendant, whereupon, the officers stated they wished to discuss an “assault” and asked for permission to enter. Both officers testified the defendant orally assented to their request and opened the screen door, thereby permitting them to enter. Both officers testified the defendant admitted he had been at No. 53 Concord Street during the afternoon “ about money”, had not assaulted anyone, and at first denied possession of a pistol. Police Officer Callea testified that his brother officer (Kline) carried on “most of” the conversation with the defendant; that after he stepped into the room he observed a couch to the left of the doorway; that he saw the butt end of an automatic pistol lying under a pillow on the couch, and asked the defendant’s permission to lift the pillow, which was granted. This action, the officer testified, revealed an automatic pistol, fully cocked, with one round in the chamber and six live rounds in the magazine. Both officers also testified the defendant stated the pistol belonged to him, that it had been given to him as a gift by his son, who had brought it from Germany “ some time ago ”, and that he (the defendant) did not have a permit for it.
It is undisputed the officers had no warrant of any kind with them and both testified they did not “go into arrest him”. Both were in full uniform.
The defendant testified upon the hearing that he is 67 years of age, and that he had a fourth grade education, and is a retired railroad worker. He further testified on the day in question he was not feeling well. At approximately 3:40 p.m. on said date he stated he was asleep on a couch in his apartment when he was aroused by a knock at the door. Upon opening the door he recognized his visitors as two police officers. The defendant denied he assented to the officers’ request to enter his room and, in fact, denied the officers either asked to come in to discuss an assault, or that they asked permission to enter. He stated at one point in his testimony that he “ unhooked the screen door ”. At another point he testified the officers “ pulled ” the screen door open; that they came in “ fast ” and that one of them went around him and raised the pillow on his bed. He denied the butt of the pistol was visible under the pillow.
*563 It is undisputed the officers advised the defendant he was under arrest for illegal possession of the firearm after their discovery of the same.
The United States Constitution (4th Amdt.), and the New York Constitution (art. I, § 12) condemn in identical language all unreasonable searches and seizures.
The law is well settled that evidence, i.e., product of crime, instrumentality of crime, or contraband, and tangible or intan.gible “ tainted ” evidence (Silverman v. United States, 365 U. S. 505; Wong Sun v. United States, 371, U. S. 471) obtained by search and seizure in violation of the Fourth Amendment, made applicable to the States through the due process clause of the Fourteenth Amendment (Ker v. California, 374 U. S. 23) is inadmissible in our courts (Mapp v. Ohio, 367 U. S. 643; People v. Loria, 10 N Y 2d 368).
Search and seizure can be upheld only (1) if conducted pursuant to a legal search warrant (People v. Loria, supra), (2) if incident to a lawful arrest (Draper v. United States, 358, U. S. 307), or (3) if by consent (Tatum v. United States, 321 F. 2d 219; State v. Hanna, 150, Conn. 457).
In the present case, the search was not made pursuant to a search warrant, nor have the People offered sufficient evidence from which this court might conclude the search and seizure was incident to a lawful arrest. As a matter of fact, both officers testified they did “ not go into arrest ”.
The People urge there was no search conducted by the police officers prior to their confiscation of the pistol. This begs the question; for whatever they were doing on the premises their testimony made it perfectly clear that they were investigating a complaint. Fundamentally, there can be no difference between “ investigation ” and ‘ ‘ search ”. To investigate implies careful inquiry, research, examination, systematic tracking, i.e., search. This, of course, does not mean that every confrontation between the officer and a citizen is illegal per se, simply because it may be termed a “search”.- But when one enters upon the constitutionally privileged premises of another (Wong Sun v. United States, supra; Silverman v. United States, supra) he may only do so legally under one or more of three conditions above set forth.
Here then the prime question is, “ Did the defendant consent to the search of these premises? ”
Because the State claims “consent”, the State carries the heavy burden of proving by clear and convincing proof such consent was freely and voluntarily given. (United States v. Smith, 308 F. 2d 657; Pekar v. United States, 315 F. 2d 319; *564 Hall v. Warden, 313 F 2d 483). While, ordinarily, the burden of proof rests on the defendant to sustain a claim of illegal search and seizure (People v. Lombardi, 18 A D 2d 177, affd. 13 N Y 2d 1014) nevertheless, after issue joined, the People, in order to sustain a search and seizure by consent, “ are under the necessity of going forward ” with their proof. (See People v. Malinsky, 15 N Y 2d 86, 91; People v. Gary, 14 N Y 2d 730, cert. den. 379 U. S. 937.)
“ Consent is a waiver of the constitutional protection. Consent therefore makes any product of any search, no matter how unreasonable, admissible in evidence * * Because ‘ consent ’ constitutes a waiver of the constitutional protections: ‘ Courts indulge every reasonable presumption against waiver of fundamental rights ’ (Johnson v. Zerbst, 304 U. S. 458) ” [1]
It is undisputed in the instant case the defendant was a negro man of 67 years of age, a retired railroad worker living alone on a pension. It is also undisputed that he did not hear and see too well, that he had been “feeling poorly” on the day in question and was ‘‘ lying down ’ ’ when the officers arrived; and that he had a fourth grade education.
While there is no evidence of actual coercion or duress with respect to the seizure of the pistol in the instant case (cf. Channel v. United States, 285 F. 2d 217, 219-220) the consent of the defendant to entry and his later consent to the lifting of the pillow (which act fully exposed the weapon) smacks more of meek submission to authority (cf. Waldron v. United States, 219 F. 2d 37) than it does of free, voluntary, knowledgeable, intelligent, unequivocal consent. (See Channel v. United States supra; also, see, Holt v. State, 17 Wis. 2d 468.)
This court finds as fact in the instant case the compliance with the officers’ authority was submissive and not consensual.
Granted here, arguendo, the butt of the pistol was in plain view of the officer as he stood in the defendant’s apartment. Granted, that which is in plain view is not in every case the product of a search (Ker v. California, 374 U. S. 23, 36-37; United States v. Barone, 330 F. 2d 543). Nevertheless, we deal here with the point at which the search begins in order to determine its legality. Parenthetically, it should be noted the instant case is clearly distinguishable from United States v. Barone (supra). In the Barone case the officers were already legally within the defendant’s apartment when they made their discovery of counterfeit money in a toilet commode.
*565 In the instant case the People contend the consent to enter was a consent to search. This court holds a consent to enter is not necessarily a consent to search. At least, on the facts here, this court cannot so find.
The rule is, “ A search prosecuted in violation of the Constitution is not made lawful by what it brings to light * * * ” (Byars v. United States, 273 U. S. 28, 29; see, also, Henry v. United States, 361 U. S. 98,104).
“ In law [a search] is good or bad when it starts and does not change character from its success ” (United States v. Di Re, 332 U. S. 581, 595).
A home, however humble, has under our law special dignity and special sanctity. The proper way to search a dwelling place is to obtain a search warrant (see People v. Williams, 24 A D 2d 274; People v. Mace, 38 Misc 2d 533; People v. Sapp, 43 Misc 2d 81).
The motion to suppress is accordingly granted.
The defendant has also moved to dismiss the indictment herein on the ground that a preliminary hearing was pending in .the City Court of the City of Rochester (Code Crim. Pro., § 190) when the Grand Jury returned the same. This motion is denied.
It is well-settled law that despite the pendency of a preliminary hearing in Magistrate’s Court, the People may submit a case to a Grand Jury and the indictment will supersede any prior proceedings in the lower court. (People v. Belmont, 48 Misc 2d 1057; cf. People v. Jackson, 48 Misc 2d 1026; People v. Tornetto, 16 N Y 2d 902; People ex rel. Hirscliberg v. Close, 1 N Y 2d 258.)
Further, the defendant has moved to dismiss the indictment in the event the court suppresses evidence of the seizure of the pistol in question. This motion is also denied. This court has insufficient facts before it upon which to predicate dismissal of the indictment on the grounds stated.

. Excerpts from Sobel, Current Problems in the Law of Search and Seizure, p. 128.