**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Jose Rodrigo VASQUEZ,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Gustavo Arias GOMEZ,**
**Defendant–Appellant.**

**Nos. 86–5294, 86–5309.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1988.

Decided Oct. 3, 1988.

**1388**

Joseph F. Walsh, Los Angeles, Cal., for defendant-appellant Vasquez.

Paul Anthony Stabile, Pasadena, Cal., for defendant-appellant Gomez.

Enrique Romero, Asst. U.S. Atty., Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before PREGERSON and THOMPSON, Circuit Judges, and MUECKE, District Judge.*

* Honorable C.A. Muecke, United States Senior District Judge for the District of Arizona, sitting by designation.

DAVID R. THOMPSON, Circuit Judge:

Jose Rodrigo Vasquez was arrested when he delivered to an undercover police officer five one-kilogram packages of cocaine contained in a red gym bag. After his arrest, the police conducted a warrantless search of his car, and of several items found in the car. The police asked Vasquez if he had any more cocaine at his apartment. Vasquez replied that he did not know what the police were talking about and that they could search his apartment.

At Vasquez's apartment, which was being used by Gustavo Arias Gomez at the time, the police conducted another search during which they seized in excess of twenty-five kilograms of cocaine and $85,000 in cash found hidden in the apartment. They also seized miscellaneous narcotics paraphernalia and photographs showing Vasquez counting large sums of money.

During their trial, Vasquez and Gomez moved to suppress the evidence found in the car and the apartment. The government objected to the untimely suppression motion, but the court decided to hear argument on the motion after the jury had left to deliberate. At the hearing, the court concluded that Vasquez had given voluntary consent to the search of the apartment, that the searches of the car and its contents were justified under the "automobile exception" to the warrant requirement, and that the evidence should not be suppressed. Vasquez and Gomez appeal this ruling.

In addition, Vasquez contends that he should not have been cross-examined on the contents of his apartment because his direct testimony only described the events surrounding his sale of the five kilograms of cocaine to the undercover agent. He also asserts that the district court abused its discretion when it allowed an expert witness to testify that his fingerprint was found on one of the packages of cocaine discovered in his apartment.

Gomez and Vasquez argue that the court should have suppressed a photograph of Gomez discovered in an unsealed envelope in a briefcase in Vasquez's car. Gomez also argues there was insufficient evidence to convict him of possession of the five kilograms of cocaine contained in the red gym bag.

We have jurisdiction of these appeals under 28 U.S.C. § 1291, and we affirm.

## ANALYSIS

### A. *Waiver of Motion to Suppress*

The first issue we consider is whether Vasquez and Gomez waived their right to seek the suppression of evidence that they contend the police seized in violation of the fourth amendment. In arguing for waiver, the government relies on Federal Rule of Criminal Procedure 12(b), which provides that a motion to suppress evidence must be made before trial, *see* Fed.R.Crim.P. 12(b)(3), and that the failure to timely move for suppression waives the right to later assert the illegality of the search or seizure. *Id.* 12(f). The government also relies on three cases in which we held that a court does not abuse its discretion when it declines to hear an untimely suppression motion. *E.g.*, *United States v. Davis*, 663 F.2d 824, 831 (9th Cir.1981); *United States v. Wood*, 550 F.2d 435, 439 (9th Cir.1976); *United States v. Barclift*, 514 F.2d 1073, 1075 (9th Cir.1975), *cert. denied*, 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 63 (1975).

■■■ Here the court did not decline to hear the untimely motion. The district court heard the motion, listened to oral argument and considered the parties' briefs on the suppression issues. We agree with the Fifth and Eleventh Circuits that when the district court considers and resolves an untimely suppression motion on its merits, we may review that decision on appeal. *E.g.*, *United States v. Crosby*, 739 F.2d 1542, 1548 (11th Cir.), *cert. denied*, 469 U.S. 1076, 105 S.Ct. 576, 83 L.Ed.2d 515 (1984); *United States v. Contreras*, 667 F.2d 976, 978 n. 2 (11th Cir.), *cert. denied*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982); *United States v. Marx*,

635 F.2d 436, 440–41 (5th Cir. Unit B Jan. 1981); *United States v. Hicks*, 524 F.2d 1001, 1003 (5th Cir.1975), *cert. denied*, 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976); *see also* 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 673, at 769 & n. 57 (1982) (collecting cases in support of statement that "if the district court entertains the belated [suppression] motion and decides it on its merits, it cannot be argued on appeal that it had been waived"). When a court rules on the merits of an untimely suppression motion, it implicitly concludes that there is adequate cause to grant relief from a waiver of the right to seek suppression. *See* Fed.R. Crim.P. 12(f).

### B. *Vasquez's Appeal*

1. Vasquez Voluntarily Consented to the Search of His Apartment

Vasquez contends he did not voluntarily consent to the search of his apartment. The voluntariness of consent is a question of fact to be determined from the totality of all the circumstances. *United States v. Gomez*, 846 F.2d 557, 559 (9th Cir.1988) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed. 2d 854 (1973)). We have said that the court should consider "those [facts] that, in the district court's judgment, in fact influenced the defendant's decision to consent to the search." *Id.* at 560. Because the "district judge has substantial latitude in making such determinations[,] we review these findings only for clear error." *Id.* Furthermore, we view the evidence in the light most favorable to the fact-finder's decision. *United States v. Castillo*, 844 F.2d 1379, 1387 (9th Cir.1988) (citation omitted).

In assessing the voluntariness of consent, we have identified several factors the fact-finder should consider, although none is dispositive. *Id.* at 1387. We have found the following factors relevant to whether consent is voluntary:

(1) whether the defendant was in custody; (2) whether the arresting officers have their guns drawn; (3) whether Miranda warnings have been given; (4) whether the defendant was told he has a

right not to consent; and (5) whether the defendant was told a search warrant could be obtained.

*Id.* at 1387–88 (citations omitted).

 Viewing the evidence in the light most favorable to the fact-finder's decision, the following facts emerge: After arresting Vasquez, Officer Moreno conducted a pat-down search and then advised him of his *Miranda* -rights. Although Vasquez was in handcuffs at the time, none of the officers had their weapons drawn. Speaking in Spanish, Officer Moreno asked Vasquez whether he had any more cocaine in his apartment. Vasquez responded that he did not know what Officer Moreno was talking about and that Officer Moreno could search Vasquez's apartment to see for himself. Officer Moreno then explained that Vasquez did not have to consent to the search of his apartment. Moreno further explained that if Vasquez did not consent, the police would be required to seek a warrant before they could search his apartment. Officer Moreno asked Vasquez whether he understood and Vasquez said that he did and that the police could go ahead and search the apartment. Officer Moreno again explained to Vasquez that he did not have to consent and that the police would obtain a warrant if he did not. Vasquez replied that he understood and the police could search his apartment. Under these facts, the scrupulous attention by the police to the niceties of obtaining valid consent to a search, coupled with Vasquez's repeated assertions that he understood he did not have to consent and his repeated consent to the police officer's request to search, support the district court's finding of voluntary consent.[1]

Vasquez relies on *Channel v. United States*, 285 F.2d 217 (9th Cir.1960), in arguing that his consent was not voluntary. Vasquez points out that in *Channel,* in responding to a question by a government agent whether Channel had any more drugs in his apartment, Channel stated: "No, my apartment is clean. There is nothing there. You can go out and search the place." *Id.* at 219. We held that Channel had not voluntarily consented to the search of his apartment. We stated his words "were not to give consent at all but only evidenced false bravado." *Id.* at 220. Vasquez contends that, like Channel, his purported words of consent were only false bravado.

Vasquez's reliance on *Channel* is misplaced. We decided *Channel* before the Supreme Court held in *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), that the voluntariness of consent is to be determined from the totality of the circumstances. *Id.* at 227. Applying this test to *Channel,* it is clear that Channel's consent was not voluntary. In *Channel,* government agents "made a display of firearms," handcuffed Channel and took him to their office where he was interrogated for thirty to forty-five minutes. *Channel,* 285 F.2d at 219. Channel remained handcuffed throughout his interrogation. *Id.* He was not told that the agents intended to search his apartment. *Id.* at 220. He also was not told that he did not have to consent to the search or that the agents would have to obtain a warrant if he refused to consent. *Id.* These circumstances are far different from the circumstances of the present case under which Vasquez voluntarily consented to the

1. As his second argument for suppression, Vasquez contends the district court erred in finding that Gomez voluntarily consented to the search of his apartment. At the hearing on the suppression motion, Vasquez argued that Gomez's consent was not voluntary because Gomez agreed to the search only after the police already had forcibly entered the apartment. The district court rejected this argument. It found that Gomez invited the police into the apartment after being told that Vasquez had been arrested and had agreed to the search. Vasquez does not challenge this factual finding. Instead, he now raises two new arguments that Gomez's

consent was invalid: First, Vasquez asserts that Gomez had no authority to consent because he was simply a guest in the apartment. Alternatively, Vasquez argues Gomez's consent was invalid because it was tainted by Gomez's knowledge of Vasquez's allegedly invalid consent. We reject the second argument because we have concluded that Vasquez's consent was voluntary and therefore valid. We do not reach Vasquez's first argument because he did not raise it at the suppression hearing. *See United States v. Hicks,* 524 F.2d 1001, 1004 (5th Cir.1975), *cert. denied,* 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976).

search of his apartment. *Channel,* therefore, is inapposite.

## 2. The Car Search Was Valid

After arresting Vasquez, Officer Moreno conducted a warrantless search of Vasquez's car. It is undisputed that Officer Moreno did not seek or obtain Vasquez's consent to this search. In the car, Officer Moreno found an unlocked briefcase, which he opened. In the briefcase, Officer Moreno found several bills, two driver's licenses for Vasquez, and two unsealed envelopes marked for registered mail delivery. One of the unsealed envelopes contained a photograph of the defendant Gomez. Vasquez contends that the car search was invalid because there were no exigent circumstances justifying a warrantless search. Both Vasquez and Gomez also argue that the court should have suppressed the photograph of Gomez because they allege the envelope containing it was sealed. They contend that a warrant was required before the contents of the envelope could be examined.

■ Under the Supreme Court's decisions in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), and *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), as well as our decision in *Salazar,* 805 F.2d 1394 (9th Cir.1986), there is no doubt that the search of Vasquez's car was valid under the automobile exception to the warrant requirement of the fourth amendment. Automobiles may be searched "without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met." *California v. Carney,* 471 U.S. at 392, 105 S.Ct. at 2070. Probable cause existed in this case. The police had a generalized belief that Vasquez's car would have contraband somewhere inside it. Officer Moreno, who searched the car, observed Vasquez step out of the car carrying a red gym bag, which contained five packages of what appeared to be cocaine. Officer Moreno watched Vasquez tear open the packages, display the contents to the undercover agent and exchange the gym bag for a briefcase containing $155,000 in

cash. Like the DEA agents in *California v. Carney,* Officer Moreno "had fresh, direct, uncontradicted evidence that [Vasquez] was distributing a controlled substance from the vehicle, apart from evidence of other possible offenses. The [police] thus had abundant probable cause to enter and search the vehicle for evidence of a crime." *Carney,* 471 U.S. at 395, 105 S.Ct. at 2071.

■ Vasquez argues, however, that even if the police had probable cause to search the car, they could not open the envelope they found in the briefcase inside the car. Vasquez argues that objects intended for the United States mails may not be opened without a warrant, even though they are found during a valid warrantless search of an automobile.

Under the "automobile exception" to the warrant requirement, if the police have probable cause to search a lawfully stopped vehicle, *Salazar,* 805 F.2d at 1397, then the police may "search ... every part of the vehicle and its contents that may conceal the object of the search." *Ross,* 456 U.S. at 825, 102 S.Ct. at 2173. We need not resolve any possible conflict between the fourth amendment protection given the mails and the permissible scope of automobile searches. In the present case, the district court found that the envelope containing the photograph of defendant Gomez was unsealed and open at the time of the search. Vasquez suggests that Officer Moreno's testimony to this effect is not credible. Credibility determinations, however, are matters left to the trier of fact. *United States v. Good,* 780 F.2d 773, 774 (9th Cir.), *cert. denied,* 475 U.S. 1111, 106 S.Ct. 1523, 89 L.Ed.2d 920 (1986). "The trial judge was in the unique position to observe the demeanor of both the [defendant] and the police officers while we have only the cold record, which is sterile in comparison." *United States v. Hood,* 493 F.2d 677, 680 (9th Cir.), *cert. denied,* 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974). Consequently, we review the district court's credibility determinations and factual findings for clear error. *Good,* 780 F.2d at 774. The district court's finding that

the envelope was open is not clearly errone-ous.[2]

### 3. Scope of Cross–Examination Was Not Overbroad

■ Vasquez contends the district court abused its discretion in permitting the government to cross-examine him on mat-ters beyond the scope of his direct testimo-ny. Federal Rule of Evidence 611(b) com-mits the scope of cross-examination to the trial judge's discretion. *See United States v. Miranda–Uriarte*, 649 F.2d 1345, 1353 (9th Cir.1981); *United States v. Green*, 648 F.2d 587, 594 (9th Cir.1981). In exercising this discretion, the trial court may permit cross-examination "as to all matters rea-sonably related to the issues [the defend-ant] put in dispute by his testimony on direct." *Miranda–Uriarte*, 649 F.2d at 1353; *Green*, 648 F.2d at 594 (same). Vas-quez argues that because his direct testi-mony addressed only the events surround-ing his delivery of the five kilograms of cocaine to the undercover officer, the court abused its discretion in permitting him to be cross-examined concerning the twenty-five kilograms of cocaine, the parapherna-lia, and the $85,000 in cash discovered in his apartment. We disagree.

In his direct testimony, Vasquez testified about the events leading up to his arrest. He testified that he left his apartment at 8:00 a.m. on the day that he was arrested, and that he left alone. He testified that the Roscoe Boulevard apartment was his apartment. What was in that apartment was a subject "reasonably related" to Vas-quez's direct testimony. Thus, the district court did not abuse its discretion in permit-ting Vasquez to be cross-examined about the cocaine, money, photographs and nar-cotics paraphernalia discovered in his apartment.

### 4. The Court Properly Admitted the Fingerprint Evidence

■ Vasquez's final argument is that the district court abused its discretion in allowing an expert witness to testify that Vasquez's fingerprint was discovered on one of the packages of cocaine discovered in his apartment. Vasquez contends the government failed to lay a proper founda-tion to establish that the fingerprint al-leged to be his was from the package of cocaine found in the apartment.

"The question of authenticity is left to the discretion of the trial judge and is reviewed on appeal under an abuse of dis-cretion standard." *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir.), *cert. denied*, 474 U.S. 1022, 102 S.Ct. 574, 88 L.Ed.2d 557 (1985); *United States v. Perlmuter*, 693 F.2d 1290, 1292 (9th Cir.1982). It also is our rule that the "government need only make a prima facie showing of authentici-ty." *Black*, 767 F.2d at 1342. In determin-ing whether the government has made a prima facie showing that the proffered evi-dence is "authentic and admissible," we require "strict compliance with the authen-ticity rules." *Perlmuter*, 693 F.2d at 1292 (collecting cases).

The relevant authenticity rules are pro-vided by Federal Rule of Evidence 901, which permits the authentification or iden-tification of evidence to be "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). The rule also offers several non-exclusive illustrations of valid "examples of authenti-cation or identification." *Id.* 901(b). Among these methods is testimony by a witness with knowledge that a matter is what it is claimed to be, *id.* 901(b)(1), or comparison by an expert witness with prop-erly authenticated specimens. *Id.* 901(b)(3). In the present case, although we think "the Government could have done a better job of laying the foundation," *United States v. Anguloa*, 598 F.2d 1182, 1186–87 (9th Cir. 1979), the court did not abuse its discretion in permitting expert witness testimony that Vasquez's fingerprint was found on a pack-age of cocaine seized in his apartment.

**2.** In support of his motion to suppress the pho-tograph seized from Vasquez's car, Gomez sim-ply contends the envelope was sealed and that the search of it was impermissible. Because we have said that the district court's finding that the envelope was unsealed is not clearly errone-ous, we reject Gomez's contention to the con-trary.

- Vasquez's argument is that because the expert witness, Officer Bowsfield, did not testify that he personally lifted the fingerprint which the court permitted him to identify as that of Vasquez, the fingerprint was not properly authenticated. Vasquez contends the fingerprint could have been lifted from a place or object other than the specific package found in his apartment, and that Officer Bowsfield did not have any knowledge of where the fingerprint came from. We disagree. Officer Bowsfield testified that all the prints identified as either Gomez's or Vasquez's were lifted by him or his assistant, Officer Clara. Officer Clara did not testify for the government. Officer Bowsfield testified, however, that he and Officer Clara lifted all the fingerprints at the same time, in the same room, on the same day, and that they discussed how to label the lifted prints to reflect the various packages on which they were found. Officer Bowsfield testified that he lifted all the fingerprints from the five one-kilogram packages given by Vasquez to the undercover officer, and that Officer Clara lifted the prints from the packages recovered from the apartment. Thus, while Officer Bowsfield may not have lifted the fingerprint himself, his testimony established that the fingerprint had to come from the cocaine packages taken from the apartment.

The authenticity rules were fully complied with and the trial court did not abuse its discretion in allowing Officer Bowsfield to testify that Vasquez's fingerprint was found on one of the packages of cocaine discovered in his apartment.

## C. *Gomez's Appeal*

In a previous portion of this opinion, we concluded that the district court properly denied Vasquez and Gomez's joint motion to suppress evidence. We now consider Gomez's contention that there is insufficient evidence to support his conviction for possession of the five kilograms of cocaine delivered by Vasquez to Officer Dowling. Gomez argues that his fingerprints were not found on any of these packages of cocaine. He also points out that there was no testimony linking him to these cocaine packages. Consequently, he asserts that a reasonable trier of fact could not have found from his possession of the twenty-five kilograms of cocaine in Vasquez's apartment that he possessed the five kilograms of cocaine Vasquez sold to Officer Dowling. In this argument, Gomez relies on *United States v. Valenzuela*, 596 F.2d 824 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979).

We need not consider Gomez's *Valenzuela* argument. Gomez fails to mention that his conviction for possession of the five kilograms of cocaine rested on a *Pinkerton* theory. Applying the Supreme Court's decision in *United States v. Pinkerton*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), we have explained that a "party to an unlawful conspiracy may be held responsible for substantive offenses committed by his co-conspirators in furtherance of the unlawful project, even if the party himself did not participate directly in the commission of the substantive offense." *United States v. Crespo de Llano*, 838 F.2d 1006, 1019 (9th Cir.1987). The court gave the jury a valid *Pinkerton* instruction.[3] Because the jury found Vasquez and Go-

---

**3.** The court instructed the jury as follows:

If you find that a particular defendant is guilty of conspiracy as charged in count one, you may also find that defendant guilty of a substantive offense as charged in any other count of the indictment, provided that you find that the essential elements of that count as defined in these instructions have been established beyond a reasonable doubt, and provided that you also find beyond a reasonable doubt,

First, that the offense charged in the substantive count was committed pursuant to the conspiracy, and

Second, that the particular defendant was a member of the conspiracy at the time the substantive offense was committed.

Under the conditions just defined a defendant may be found guilty of a substantive count even though he did not participate in the acts constituting the offense as defined in the substantive count. The reason for this is that a co-conspirator committing a substantive offense pursuant to a conspiracy is held to be the agent of the other conspirators.

mez were part of a conspiracy to possess cocaine with intent to distribute, Gomez's conviction for possession of the five kilograms of cocaine sold by Vasquez in furtherance of the conspiracy was proper.

AFFIRMED.