976 F.2d 739
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff/Appellee,
v.
Fermin Vital CANCHOLA, Defendant/Appellant.
 No. 90-10191.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 15, 1992.*
Decided Sept. 23, 1992.
 
 Before CHOY, CYNTHIA HOLCOMB HALL and ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Fermin Vital-Canchola ("Vital") appeals from his conviction on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 & 841(a)(1) and one count of possession with the intent to distribute cocaine as well as aiding and abetting in violation of 21 U.S.C. § 841(a)(2) and 18 U.S.C. § 2. Finding his claims lack merit, we affirm.
 
 
 3
 On December 28, 1988 Vital was indicted along with codefendants Guadalupe Lopez, Teodulo Hernandez Alvarado, and Abraham Medina Roman on one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846 & 841(a)(1), and one count of possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) & (2).
 
 
 4
 Codefendant Medina agreed to testify at trial, and trial commenced against the remaining defendants on June 13, 1989. On the third day of trial, however, Medina refused to testify and the court granted a defense motion for a mistrial. On July 26, 1989 the grand jury returned a superseding indictment that realleged the counts in the original indictment and added Count three which charged that Lopez possessed a quantity of marijuana with the intent to distribute, in violation of § 841(a)(1).
 
 
 5
 Trial of all defendants commenced on January 9, 1990. On January 22, 1990 the jury found Vital guilty of both of the charges against him in the superseding indictment. On April 2nd he was sentenced to a term of sixty months imprisonment followed by five years supervised release.
 
 
 6
 We reject Vital's argument that joinder of his trial on the cocaine possession and conspiracy charges with Lopez's trial on marijuana possession charges was improper under Federal Rule of Criminal Procedure 8 and that the district court abused its discretion in denying motions for a severance under Federal Rule of Criminal Procedure 14 for two reasons. We conclude that Vital did not first raise these motions in the district court and, therefore, he is precluded from doing so on appeal. United States v. Carlson, 900 F.2d 1346, 1349-50 (9th Cir.1990).[1]
 
 
 7
 Vital also argues that the district court erred in admitting evidence regarding two cocaine transactions between Juan Camacho and FBI informant Frank Rodriguez because the transactions had no connection to the cocaine conspiracy proven and only Rodriguez and Camacho were present during the transactions. We reject this argument because Vital failed to first raise it in the district court and thus, we are not obliged to address it on appeal.[2] Carlson, 900 F.2d at 1449-50. Second, Vital's argument that the district court abused its discretion in failing to sever evidence regarding the Camacho transactions under Rule 14 is nothing short of nonsensical because Camacho was not indicted--either in the original or superseding indictment--nor tried in this case and thus severance under Rule 14 was an impossibility.
 
 
 8
 The remainder of Vital's arguments relate to various district court rulings regarding admission of taped conversations during the trial. These contentions similarly lack merit.
 
 
 9
 Vital first argues that the district court erred in admitting duplicate cassette recordings of the original Nagra tape recordings of various conversations because the duplicates were not properly authenticated. The original Nagra tapes were admitted into evidence without objection. Marta Ntatsos, an FBI language specialist, testified that she prepared the transcripts of the tapes using the duplicate cassettes with the transcripts on the same day. She concluded that, aside from the lower volume on the original tapes, the duplicate cassettes were the same as the originals. It was only after this testimony that the district court admitted into evidence the original Nagra tapes, the duplicate cassettes, and the transcripts. Ntatsos's testimony was adequate prima facie evidence of authenticity. Fed.R.Evid. 901(b)(3); United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir.1989); United States v. Vasquez, 858 F.2d 1387, 1392-93 (9th Cir.1988); see United States v. Hernandez-Herrera, 952 F.2d 342, 344-45 (10th Cir.1990).
 
 
 10
 Second, Vital argues that the district court abused its discretion by refusing to allow the duplicate tapes to be played before the jury and simultaneously translated from Spanish to English by Ntatsos because to do so would be a waste of time under Rules 403 and 611(a) of the Federal Rules of Evidence. Vital's argument on appeal was not raised first in the district court. Carlson, 900 F.2d at 1349-50. Therefore, we need not reach this contention.
 
 
 11
 Finally, Vital contends that the trial court erred in admitting the transcripts of the duplicate cassette tapes. These arguments, however, also fail.
 
 
 12
 First, he urges that the transcripts were not properly authenticated because they were not signed or certified as true translations by a court interpreter certified by the Administrative Office of the Courts. Because he failed first to raise this objection below, we decline to address it here. Carlson, 900 F.2d at 1349-50.
 
 
 13
 Second, Vital argues that the district court erred in admitting the transcripts because Rodriguez assisted in preparing the transcripts. In a case similar to this one, the First Circuit held:
 
 
 14
 The objectivity of the transcriber of a tape obviously bears on the decision whether or not to admit a transcript into evidence.... The transcript should, therefore, mirror the tape and should not be an amalgam of the recording and the hearsay testimony of persons present at the conversation. Where inaccuracies in the transcript combine with possible bias in the transcription process, a transcript may be excluded from evidence. See United States v. Robinson, 707 F.2d 872, 877-78 (6th Cir.1983). The touchstone, however, is the accuracy of the transcript.
 
 
 15
 United States v. Font-Ramirez, 944 F.2d 42, 48 (1st Cir.1991). In Font-Ramirez, the government informant transcribed the taped conversations, and a court interpreter translated the transcripts into English. The court properly allowed the jury to review the English transcripts because the defendant could not identify any inaccuracies in them. Id.
 
 
 16
 Similarly, the defendants cannot point to any inaccuracies in the transcript in this case even though they had the transcript and the tapes before the trial began. Moreover, Rodriguez's role in the transcription process was far more limited than the informant's role in Font-Ramirez. Ntatsos completed the transcription and translation by herself. Rodriguez identified the voices of the speakers. At other points, he added explanations for unintelligible or silent portions of the tapes. Ntatsos put these comments in parentheses, allowing the jury to separate her translation from Rodriguez's comments. Ntatsos testified that Rodriguez did not help her translate the conversations into English. Both Ntatsos and Rodriguez testified that the transcripts were accurate representations of the conversations. Under these circumstances, the district court did not err in admitting the transcripts.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 At trial Vital never individually moved to sever or for misjoinder upon the grounds he alleges on appeal. Nor did he formally join in codefendant Lopez's written motions or orally join those motions when renewed during trial. Nonetheless, Vital argues that Lopez's Rule 8 and 14 motions before the district court preserved objections on his behalf because prior to trial they stipulated that, for the purpose of lodging objections during trial, an objection by one defendant would constitute an objection by all absent contrary indication
 We flatly reject appellant's attempt to ride on the coattails of codefendant Lopez's proper Rule 8 and 14 motions in the district court. Although the defendants agreed to jointly object at trial, that agreement obviously was fashioned to ease the handling of overlapping and disruptive evidentiary objections made by counsel for four defendants during the course of the trial. Moreover, Lopez's arguments for severance and misjoinder in the district court were that they were necessary to enable him to produce exculpatory testimony of his codefendants and to avoid their guilt from rubbing off on him because there was no link between Lopez and the cocaine conspiracy. Logically these grounds cannot double as grounds for severance or misjoinder for Vital. He argues severance and misjoinder are proper because the marijuana charge related only to Lopez and had nothing to do with the cocaine charges against him.
 
 
 [2]
 The only objection lodged during trial to the introduction of evidence regarding the Camacho transactions came from attorney for codefendant Lopez. She moved the court for a limiting instruction only as to Lopez, arguing that the testimony had nothing to do with him "or I might add conspiracy in this case." Reporter's Transcript, January 9, 1990 [sic] (1989) at 165:2-5. Thus, the objection made was not--as Vital implies--to exclude any reference to the Camacho dealings but rather to limit the jury's consideration of with respect to Lopez