UNITED STATES of America,
Plaintiff–Appellee,

v.

Louise Han PEREZ;  Joseph E. Perez;
and John Velasco Cruz, Defendants–
Appellants.

Nos. 94–10313, 94–10314 and 94–10400.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 1995.

Decided Oct. 2, 1995.

**1374**

David J. Highsmith, Highsmith & O'Mallan, Agana, Guam, for defendant-appellant Louise Han Perez.

Robert E. Hartsock, Assistant Federal Public Defender, Agana, Guam, for defendant-appellant Joseph E. Perez.

Howard Trapp, Howard Trapp Inc., Agana, Guam, for defendant-appellant John Velasco Cruz.

Karon V. Johnson, Assistant United States Attorney, Agana, Guam, for the plaintiff-appellee.

Before: PREGERSON, KOZINSKI, and HAWKINS, Circuit Judges.

PREGERSON, Circuit Judge:

Defendants–Appellants Louise Han Perez, Joseph E. Perez, and John Velasco Cruz were indicted with six others for conspiring to distribute heroin and cocaine. All three were convicted of distributing heroin in violation of 21 U.S.C. § 841(a)(1) and being felons in possession of firearms in violation of 18 U.S.C. § 922(g). Joseph Perez and John Cruz were also convicted of possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and using firearms during drug trafficking in violation of 18 U.S.C. § 924(c). Louise Perez appeals her conviction and sentence, Joseph Perez appeals his conviction, but not his sentence, and John Cruz appeals his conviction and sentence. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part.

## LOUISE HAN PEREZ

### I. Background

A grand jury indictment charged Louise Perez, Joseph Perez, John Cruz, and six others with conspiring to distribute narcotics, using firearms during drug trafficking, and being felons in possession of firearms.[1]

In 1994, Louise Perez sold eleven rare coins for $500 to Mike Cummings, a professional coin dealer. When Cummings realized that the coins Louise Perez sold him matched the description from a report of stolen coins, he stopped payment on the $500 check to induce Louise Perez to return to his coin shop where the police could arrest her for selling stolen property. Louise Perez did return to Cummings' coin shop to receive payment for the coins, and Cummings gave her $500 in cash. As Louise Perez was returning to her car, the police arrested her for selling stolen property.

The arresting officers placed Louise Perez in the back of the squad car and proceeded to search her car without a warrant and without her consent. The officers found a rusty Davis .22 caliber pistol, in operable condition, in the driver's side door pocket. The officers also found a bindle of cocaine stashed inside a bible. A field test revealed that the cocaine weighed 1.0347 grams.

At trial, Louise Perez moved to suppress the evidence found in her vehicle because the search was conducted without a warrant, without her consent, and without probable cause. The trial court denied her motion. The jury convicted Louise Perez of being a felon in possession of a firearm. Louise Perez appeals this conviction. She contends that the trial court erred in denying her motion to suppress.

The jury also convicted Louise Perez for distributing heroin in violation of 21 U.S.C. § 841(a)(1). The indictment stated that the defendants distributed heroin "[b]etween 1991 and December 28, 1993." Louise Perez appeals this conviction. She alleges that the indictment was fatally flawed for failing to allege specific dates of distribution. Louise Perez raises this issue for the first time on appeal.

The trial court enhanced Louise Perez's sentence four levels under U.S.S.G. § 2K2.1(b)(5) for carrying a firearm in connection with another felony offense. Louise Perez also appeals her sentence. She maintains that the trial court erred in interpreting section 2K2.1(b)(5).

---

1. Joseph Perez is Louise Perez's brother.

## II. Analysis

### A. Probable Cause to Search Louise Perez's Vehicle

█ The trial court's determination that probable cause supported a warrantless search of a vehicle is a mixed question of law and fact reviewed de novo. *United States v. Dunn,* 946 F.2d 615, 619 (9th Cir.1991), *cert. denied,* 502 U.S. 950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991). We review for clear error the trial court's factual findings supporting the determination of probable cause. *United States v. Linn,* 880 F.2d 209, 214 (9th Cir.1989).

In *California v. Carney,* 471 U.S. 386, 392, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406 (1985), the Supreme Court held that the police may search a vehicle without a search warrant where the police have probable cause to believe that the vehicle contains contraband or evidence of a crime. In *United States v. George,* 883 F.2d 1407 (9th Cir.1989), this court defined probable cause as " 'requiring a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life,' " that contraband or evidence would be found in the place to be searched. *Id.* at 1412 (quoting *United States v. Robertson,* 606 F.2d 853, 858 (9th Cir. 1979)).

█ Louise Perez argues that the evidence seized from a search of her vehicle should have been suppressed because the officers had neither a warrant nor probable cause to search her vehicle. The trial court concluded that the officers had probable cause to search Louise Perez's vehicle because the officers could have reasonably believed that the rest of the unrecovered coins or receipts from sales of the unrecovered coins might have been in her vehicle. The court reasoned that:

> Given the uniqueness of the coins in issue, the need for the seller to transport such coins to a buyer, and the fact that on Guam, motor vehicles are frequently the only readily available mode of transportation, the Court finds that the arresting officers reasonably believed that other [stolen] coins ... would be found in the vehicle operated by Ms. Perez.

Louise Perez maintains that the link between the criminal activity for which she was arrested and the search of her vehicle was too attenuated to establish probable cause.

In *United States v. Vasquez,* 858 F.2d 1387, 1391 (9th Cir.1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 978 (1989), we held that a search was justified under the vehicle exception to the warrant requirement because the police had probable cause to believe that the defendant's car contained contraband. In that case, the defendant exited his vehicle with a gym bag containing five packages of cocaine which he sold to an undercover police officer. The officer arrested the defendant and proceeded to search his vehicle without a warrant. We explained that the officer " 'had fresh, direct, uncontradicted evidence that [the defendant] was distributing a controlled substance from the vehicle, apart from evidence of other possible offenses. The [officer] thus had abundant probable cause to enter and search the vehicle for evidence of a crime.' " *Id.* (quoting *Carney,* 471 U.S. at 395, 105 S.Ct. at 2071).

In the instant case, Louise Perez drove her vehicle to the mall, where the coin shop was located, to obtain $500 in cash for the allegedly stolen coins that she had sold to Mike Cummings four days earlier.[2] As Louise Perez was returning to her vehicle, the officers arrested her, placed her in the back of the squad car, and proceeded to search her vehicle. The government argues that, like the police in *Vasquez,* the officers in the instant case had probable cause to conduct the vehicle search because they had uncontradicted evidence that she had used her vehicle to transport her to the mall where she allegedly received cash for stolen property. We disagree.

Finding probable cause in this instance would create an unwarranted extension of the law by allowing a search of a vehicle *four* days after alleged criminal activity occurred *with only a speculative connection* between the vehicle and the alleged criminal activity. The only connection between the alleged criminal activity and Louise Perez's vehicle was that she *might* have driven it four days

**2.** Louise Perez was never charged with selling   stolen property.

earlier to the mall where the coin shop was located, because "on Guam, vehicles are frequently the only readily available mode of transportation." This logic is insufficient to provide an officer with a reasonable belief that contraband or evidence would be found in the place to be searched.

Furthermore, unlike the defendant in *Vasquez*, whom the police observed exiting his vehicle carrying cocaine, Louise Perez exited her vehicle without contraband. The allegedly stolen coins had been sold four days prior to the warrantless search of Louise Perez's vehicle. The coin dealer reported the coin sale to the police without having observed her mode of transportation. A friend may have driven her to the coin shop. Thus, the police had *stale* and second hand information, whereas in *Vasquez*, the police had "fresh, direct, and uncontradicted evidence" that the defendant was selling cocaine *from* his vehicle. *Vasquez*, 858 F.2d at 1391. It was unreasonable for the officers to believe that evidence of a four day old crime would be found in a vehicle which never had been connected with the alleged criminal activity.

We hold that the trial court erred in denying Louise Perez's motion to suppress the evidence found in her vehicle. Thus, her conviction for being a felon in possession of a firearm is reversed. Furthermore, the four level enhancement of her sentence for possessing a firearm in connection with another felony is vacated because the firearm and the cocaine should have been suppressed as the fruits of an illegal search.

### B. Sufficiency of the Indictment

■ Because Louise Perez did not object to the sufficiency of the indictment at trial, we review this issue for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Dischner*, 974 F.2d 1502, 1514 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993).

■ Louise Perez contends that the absence of specific dates in the indictment for the charge of distribution of heroin renders the indictment fatally defective. The indictment stated: "Between 1991 and December 28, 1993, within the District of Guam, the defendant[ ] herein, LOUISE HAN PEREZ,

... did unlawfully and knowingly distribute heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, § 841(a)(1) and Title 18, United States Code, § 2."

In *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir.1979), this court held that a valid indictment "must set forth the elements of the offense charged and contain a statement of the facts and circumstances that will inform the accused of the specific offense with which he is charged." *Id.* (citing *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). We observed that an indictment must assure the defendant that his or her prosecution is based on facts presented before the grand jury. *Cecil*, 608 F.2d at 1297. The indictment must also provide sufficient information to enable the defendant to prepare a defense. *United States v. Rohrer*, 708 F.2d 429, 435 n. 7 (9th Cir. 1983).

In *United States v. Christopher*, 700 F.2d 1253, 1257 (9th Cir.1983), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983), the defendants were charged with being present on federal property after normal working hours. The indictment specified neither the time that the defendants were alleged to have been on the property nor the regular working hours of the inhabitants of the building. Despite the absence of specific times, we held that the indictment, when read in its entirety, sufficiently informed the defendants of the charges against them and enabled them to prepare a defense. *Id.*

Similarly, in the instant case, the indictment, when read in its entirety, provided sufficient information to inform Louise Perez of the charges against her. The indictment mentioned the particular factual circumstances surrounding the charges against Louise Perez. The indictment alleged: (1) that on July 28, 1992, Jeanne Cyvila Lathan and Tama Thielen sold .05 grams of heroin which they obtained from Louise Perez, (2) that on July 30, 1993, Lathan, Thielen, and Matilda Paulino sold .06 grams of heroin which they obtained from Louise Perez, (3) that on September 17, 1992, Louise Perez sold .03 grams of heroin for $500, (4) that in November 1993, Louise Perez provided Joseph Perez with crystal methamphetamine to

exchange for heroin for Louise Perez's personal use, (5) that from 1991 to August 1992 Louise Perez sold heroin from her residence in Agana Springs, and (6) that after Typhoon Omar destroyed her residence in Agana Springs, Louise Perez continued to provide heroin for Joseph Perez and Paulino to sell.[3] These specific allegations notified Louise Perez of the charges against her, assured her that her prosecution was based on facts presented to the grand jury, and enabled her to prepare a defense.

■ Furthermore, because time is not an element of the crime of distributing heroin, the indictment was not fatally broad for failing to include precise dates of distribution. *See United States v. Laykin,* 886 F.2d 1534, 1542 (9th Cir.1989), *cert. denied,* 496 U.S. 905, 110 S.Ct. 2586, 110 L.Ed.2d 267 (1990).

We conclude that the indictment was valid.

### III.  Conclusion

Louise Perez's conviction for being a felon in possession of a firearm is REVERSED. Her conviction for distributing heroin is AFFIRMED. Louise Perez's four level sentence enhancement for possessing a firearm in connection with another felony offense is VACATED.

### JOSEPH E. PEREZ

### I.  Background

An initial grand jury indictment charged Louise Perez, Joseph Perez, John Cruz, and many others with conspiring to distribute cocaine and heroin. Art Rabon, Angela Sablan, Pat Chun, and Matilda L.G. Paulino were among those originally charged, but they entered into plea agreements with the government in exchange for their testimony against Louise Perez, Joseph Perez, John Cruz, and six other defendants.

After the arrangements were made with Rabon, Sablan, Chun, and Paulino, the government sought a new indictment from the grand jury. With the aid of testimony from Rabon, Sablan, Chun, and Paulino, the grand jury issued a new indictment which was similar to the initial indictment, and the initial indictment was dismissed. The superseding indictment charged Louise Perez, Joseph Perez, John Cruz, and six others with conspiring to distribute narcotics, using firearms during drug trafficking, and being felons in possession of firearms.

A DEA investigation targeting Joseph Perez revealed that Joseph Perez sold cocaine and heroin to an informant four times in 1992. Guam police officers, in cooperation with DEA agents, placed Joseph Perez's residence under surveillance. The surveillance revealed that John Cruz, another defendant, had ready access to Joseph Perez's residence and that Joseph Perez exchanged firearms and other stolen goods for heroin.

An informant told the agents that when Joseph Perez learned he was under surveillance, he began to store the "bulk" of his heroin at John Cruz's residence. Frank Okiyama, another informant, reported that when he and Joseph Perez ingested heroin together, they would place their weapons on the table. Okiyama told the agents that Joseph Perez had a .44 magnum pistol.

Agent Anderson submitted an affidavit in support of a search warrant for both Joseph Perez's and John Cruz's residences. The search warrant issued, and both warrants were executed on December 28, 1993.

When the officers entered Joseph Perez's residence, Joseph Perez was seated on the couch with Matilda Paulino.[4] As Joseph Perez stood up, the officers observed a Caspian Arms .38 caliber pistol under his right thigh on the couch, and the officers arrested him. Paulino and Pat Chun, two government informant witnesses, testified that the gun belonged to Joseph Perez.

Among the discovery materials provided by the government were portions of the grand jury transcripts. After reviewing the grand jury transcripts, Joseph Perez moved the court to conduct an *in camera* review of all the grand jury proceedings. Joseph Perez alleged that the prosecutor improperly testified to the grand jury, and that DEA Agent Anderson testified to matters he "believed" rather than to facts. The trial court granted the review and found no evidence of

---

**3.** These allegations were taken from the "Overt Acts" section of the conspiracy to distribute narcotics count of the indictment.

**4.** Joseph Perez and Paulino were romantically involved and shared an apartment together.

misconduct. Joseph Perez then moved for an independent review of the grand jury materials. The court requested that he file a written motion in support of his request for review, but Joseph Perez refused. The court then denied his motion.

During the trial, Art Rabon, Pat Chun, Angela Sablan, and Matilda Paulino testified as government informant witnesses.[5] During cross-examination of Rabon, Chun, Sablan, and Paulino, defense counsel introduced evidence of their plea agreements and implied that the informants were willing to lie in court in exchange for lighter sentences.[6] After these witnesses testified, the government elicited testimony from Agent Anderson to corroborate the informants' testimony. During her rebuttal argument, the prosecutor also mentioned the informants' plea agreements.

Rather than adopting Joseph Perez's proposed instruction on possession, the trial court chose to give the instruction on possession provided in the *Manual of Model Criminal Jury Instruction for the Ninth Circuit* § 3.16. *Id.* at 91.

The jury convicted Joseph Perez for (1) distributing heroin in violation of 21 U.S.C. § 841, (2) possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (3) using firearms during drug trafficking in violation of 18 U.S.C. § 924(c), and (4) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).

Joseph Perez appeals all convictions on the ground that the prosecutor impermissibly vouched for the credibility of the informant witnesses both during direct examination of DEA Agent Anderson and during her rebuttal argument. He also appeals his conviction for being a felon in possession of a firearm because the section 3.16 instruction did not define possession adequately.

Joseph Perez's final argument on appeal is that the trial court erred in denying his motion for an independent review of the transcripts of the grand jury proceedings that could have supported a motion to dismiss the indictment.

## II. Analysis

### A. Vouching

■ We review statements by the prosecutor vouching for the credibility of witnesses for plain error when the defendant does not object at trial to the prosecutor's statements. *United States v. Young,* 470 U.S. 1, 14, 105 S.Ct. 1038, 1045–46, 84 L.Ed.2d 1 (1985); *United States v. Williams,* 989 F.2d 1061, 1071–72 (9th Cir.1993).

■ Joseph Perez maintains that the prosecutor impermissibly vouched for the credibility of the witnesses both during the prosecutor's direct examination of DEA Agent Anderson and during the prosecutor's rebuttal argument.[7] The question we must

---

**5.** Art Rabon pled guilty to being an accessory after the fact. Angela Sablan pled guilty to distributing cocaine. Pat Chun pled guilty to federal bank fraud, and Matilda Paulino pled guilty to distributing heroin and using a firearm during a drug trafficking offense.

**6.** Although counsel for Joseph Perez did not introduce Sablan's plea agreement, counsel for two of his co-defendants did introduce her plea agreement.

The Supplemental Excerpts of Record do not indicate which defendant introduced the plea agreement of Rabon, but it does show that one of the defendants introduced Rabon's plea agreement before the government did.

**7.** Joseph Perez also argues that DEA Agent Anderson's testimony constituted improper vouching. Although the First Circuit has held that a law enforcement officer's testimony that another government witness is trustworthy constitutes improper vouching, our Circuit has not

yet decided this issue. *United States v. Piva,* 870 F.2d 753, 760 (1st Cir.1989).

We can decide the instant case without addressing the issue of whether improper vouching can come from a law enforcement agent as well as from the prosecutor herself. Even if a law enforcement agent's testimony could constitute improper vouching, DEA Agent Anderson's testimony did not constitute improper vouching in this instance. Unlike the officer in *Piva,* Anderson did not testify that he believed the informant witnesses were trustworthy. Anderson did not testify that telling the truth was a condition of their plea agreements. Anderson merely corroborated their testimony to rebut the inference that the informant witnesses were willing to lie in exchange for reduced sentences. He testified that the information the informants had provided helped prosecute a couple of heroin dealers whom they would not have been able to prosecute without help from the informants. As Agent Anderson's testimony does not constitute

decide is whether the prosecutor's statements, when taken in the context of the entire trial, more likely than not affected the jury's ability to judge the evidence impartially. *Williams,* 989 F.2d at 1071–72.

In *United States v. Kerr,* 981 F.2d 1050, 1053 (9th Cir.1992), we explained that "[i]mproper vouching occurs when the prosecutor places the prestige of the government behind the witness by providing personal assurances of [the] witness's veracity." (Internal quotations omitted). In *Kerr,* the prosecutor, in his closing argument, commented on the credibility of the government informant witnesses. In response to a suggestion that the witnesses were dishonest, the prosecutor stated: " 'Were they hoodwinking [the DEA Agent] … when I sat there on part of the interviews, were they hoodwinking me, were they hoodwinking the Court, when the Court accept[ed] their plea agreements when they agreed to cooperate.' " *Kerr,* 981 F.2d at 1052–53. The defense counsel objected, and the court attempted to cure the problem by reminding the jury that the jury is the sole judge of the witnesses' credibility. *Id.* at 1053. We held that the defense counsel's legitimate attacks on the credibility of the witnesses did not justify a response by the prosecutor which implied that the district court believed that the witnesses were trustworthy. *Id.* We concluded that, despite the curative instruction, the repeated instances of improper vouching constituted plain error. *Id.*

In *United States v. Smith,* 962 F.2d 923, 936 (9th Cir.1992), we observed that invoking the integrity of the court is qualitatively different from invoking the integrity of the prosecutor. We explained that "[i]f the prosecution may invoke the court as the guarantor of its truthfulness when the veracity of its star witness is challenged and can then survive review for plain error, … the actual likelihood … that an accused will receive a fair trial … [is] severely diminished." *Id.*

In the instant case, defense counsel attacked the credibility of the government witnesses by introducing their plea agreements. Defense counsel asserted that although polygraph tests were conditions of Paulino's, Sa-blan's, Chun's, and Rabon's plea agreements, they had not yet been tested. Therefore, defense counsel argued, the truthfulness of their testimony was questionable. The prosecutor responded to these attacks during her rebuttal argument. The prosecutor stated:

> [E]ven bad people can tell the truth when it's in their interest, and that's why we structured these plea agreements so that it is in their interests. Read those plea agreements carefully. We put them on a lie detector, we tell them that they're going to be looking at years if they're not truthful. We tell them that they're going to be testifying in the same court that they're going to be sentence [sic] in front of. Do you seriously think they're going to come into this court and lie and then stand here and be sentenced? These people are all self-destructive, but they're not crazy, they're not suicidal. You should believe them because their testimony is corroborated … their testimony was painfully truthful, they said all kinds of awful things about themselves that counsel would have had no way of verifying.

Unlike the prosecutors in *Kerr* and *Smith,* the prosecutor in the instant case did not suggest that the court had already passed judgment on the credibility of the witnesses. Here, the prosecutor mentioned the court with respect to the sentencing proceedings, but since the sentencing proceedings had not yet occurred, the prosecutor did not insinuate that the court believed that the witnesses were trustworthy.

Furthermore, in *United States v. Monroe,* 943 F.2d 1007, 1013 (9th Cir.1991), *cert. denied,* 503 U.S. 971, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992), we held that the prosecutor's references to a witness's plea agreement do not constitute improper vouching where they are made in response to "an attack on the witness's credibility because of his plea bargain." In the instant case, the prosecutor referred to the plea agreements *after* defense counsel used them to attack the credibility of the witnesses. Thus, we conclude that the prosecutor's mention of the plea agreements, taken in context of the

---

improper vouching, we leave open the question of whether a law enforcement officer's testimony that another witness is trustworthy can constitute improper vouching.

**1380**

entire trial, did not constitute improper vouching.

### B. Jury Instruction on Possession

■ We review de novo whether the jury instructions adequately covered the defendant's proffered defense. *United States v. Warren,* 25 F.3d 890, 895 (9th Cir.1994). Here, Joseph Perez contends that the trial court inadequately defined possession. This is a question of law, and because Joseph Perez objected to the instruction at trial, we review the adequacy of the jury instruction de novo.

Joseph Perez argues that the trial court instructed the jury on knowledge rather than on possession, and thereby failed to define possession for the jury. The trial court however, gave the jury the instruction on possession exactly as it appears in the *Manual of Model Criminal Jury Instructions for the Ninth Circuit* § 3.16.[8]

■ Although a trial court's use of a model jury instruction does not necessarily preclude a finding of error, we have not found any reason, thus far, to reject the model instruction on possession. *United States v. Warren,* 984 F.2d 325, 327 n. 3 (9th Cir.1993); *United States v. Terry,* 911 F.2d 272, 280 (9th Cir.1990).

In *Terry,* 911 F.2d at 280, the district court instructed the jury that possession required merely that a person "hav[e] the power to control the thing." We held that this instruction amounted to reversible error because it allowed the defendant's conviction to be "based on mere accessibility without knowledge or actual dominion or control." *Id.* We explained that the instruction provided in the *Manual of Model Criminal Jury Instructions for the Ninth Circuit* § 3.16 adequately defined the necessary elements of possession. *Id.*

■ Unlike the trial court in *Terry,* the trial court in the instant case gave the model

instruction on possession. Joseph–SER 91. Given that this court, in *Terry,* found the model instruction on possession adequate, Joseph Perez's argument that the trial court inadequately defined possession for the jury is not persuasive.

■ Joseph Perez also maintains that the prosecutor, in rebuttal argument, misstated the law by arguing that joint occupancy of a residence proves possession of the items found inside the residence. Joint occupancy of a residence does not by itself prove possession of contraband found inside the residence. *United States v. Frushon,* 10 F.3d 663, 665 (9th Cir.1993) (quoting *Delgado v. United States,* 327 F.2d 641, 642 (9th Cir.1964)), *cert. denied,* 114 S.Ct. 2175, 128 L.Ed.2d 895 (1994). But, contrary to Joseph Perez's allegations, the prosecutor did not argue that, because Joseph Perez and Paulino jointly occupied the residence, Joseph Perez possessed the firearm found inside it. Rather, the prosecutor stated that the issue was "whether they exercised control over [the firearm]." The prosecutor argued that Joseph Perez both knew of the presence of the Caspian Arms .38 and had physical control over it because it was under his right thigh when the police executed the search of his residence. Thus, it was unnecessary for the trial court to instruct the jury, in addition to the model instruction on possession, that joint occupancy by itself does not prove possession.

We conclude that the trial court did not err in giving the jury the model instruction on possession.

### C. Full Disclosure of the Grand Jury Transcripts

■ We review a trial court's decision whether to release the grand jury transcripts for abuse of discretion. *United States v. Plummer,* 941 F.2d 799, 806 (9th Cir.1991).

---

8. Jury Instruction Section 3.16 provides:

A person has possession of something if the person knows of its presence and has physical control of it, or has the power and intention to control it.

[More than one person can be in possession of something if each knows of its presence and has the power and intention to control it.]

*Manual of Model Criminal Jury Instructions for the Ninth Circuit* § 3.16. (1992). The commentary states that further distinction between actual and constructive possession and sole and joint possession is not necessary.

The trial court, in the instant case, gave both paragraphs of the model instruction on possession.

■ Joseph Perez contends that the trial court erred in denying his motion for full disclosure of the grand jury transcripts to aid him in preparing a motion to dismiss the indictment.[9] Joseph Perez alleged two grounds for disclosure of the grand jury transcripts. First, he claimed that the Assistant United States Attorney, rather than the witnesses, testified before the grand jury. Second, Joseph Perez claimed that DEA Agent Anderson's testimony recited beliefs rather than facts. The trial court conducted an *in camera* review of the grand jury transcripts and found both grounds for disclosure meritless.

■ Federal Rule of Criminal Procedure 6(e)(3)(C)(ii) provides that grand jury transcripts may be disclosed "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." A party seeking disclosure of the grand jury transcripts must demonstrate a "particularized need" for the disclosure. *Dennis v. United States*, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966); *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir.1986). The standards the trial court should apply in granting disclosure of the grand jury transcripts are "(1) that the desired material will avoid a possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that only the relevant parts of the transcripts should be disclosed." *Plummer*, 941 F.2d at 806 (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979)).

In *Walczak*, the defendant sought discovery of the grand jury proceedings to aid him in a motion to dismiss the indictment. One of the reasons the defendant sought discovery was that the law enforcement officers' testimony before the grand jury improperly summarized the testimony of other agents. However, the defendant alleged no facts in support of his claim. We held that the defendant's claim failed to meet the particularized need standard because it was speculative. *Walczak*, 783 F.2d at 857.

Similarly, Joseph Perez does not provide any evidence to support his claim that the prosecutor directly presented evidence to the grand jury. Joseph Perez's claim that the prosecutor testified is speculative and fails. Joseph Perez's claim that Agent Anderson began his responses with "I believe" rather than simply stating the facts, even if true, would not have compelled dismissal of the indictment given the amount of direct evidence presented to the grand jury from other sources.

We conclude that the trial court did not abuse its discretion in denying Joseph Perez's motion for disclosure of the grand jury transcripts.

### III. Conclusion

Joseph Perez's convictions and sentence are AFFIRMED.

### JOHN VELASCO CRUZ

#### I. Background

A grand jury indictment charged John Cruz and others with conspiring to distribute narcotics, using firearms during drug trafficking, and being felons in possession of firearms.

DEA agents obtained a warrant to search Cruz's residence based on the same affidavit used to obtain a search warrant for Joseph Perez's residence. With respect to Cruz, the affidavit contained information from an informant that Joseph Perez began to store the "bulk" of his heroin at "Bone's" residence when he learned he was under surveillance. The informant reported that Bone resided near the Carbullido School in Barrigada. According to the affidavit, this informant provided information in the past that proved reliable and essential in the convictions of three people for distributing and manufacturing narcotics.

Independent police investigation confirmed the fact that Cruz used the nickname "Bone." Independent police investigation also disclosed Cruz's exact address which was within half a mile of the Carbullido School.

---

**9.** The motion for discovery was made orally, not in writing. The court requested that Joseph Perez file a written motion stating his reasons for seeking disclosure, but he refused.

Guam police officers also discovered that Cruz owned a black Corvette which had been involved in a traffic accident the week before the affidavit was written. The officer at the scene of the accident stated that Cruz had noticeable track marks on both arms that suggested heroin usage.

Before executing the search warrant, an officer approached Cruz's residence and asked to speak to Cruz regarding the traffic accident.[10] After the first officer left, Eddie Lujan exited Cruz's residence. The officers, who were then approaching to execute the warrant, struggled with Lujan in an effort to detain him. Agent Benavente testified that, after the ruse about the traffic accident and the noisy struggle to detain Lujan, he thought that the occupants might try to destroy evidence or arm themselves. Thus, Agent Benavente forced the door open while yelling "Police officers!"

Guam Police Officer Palacios testified that as he entered Cruz's residence, he observed a hand emerging from under the kitchen table to reach for the Glock–19 9mm pistol resting on a shelf against the kitchen wall. The hand grabbed and pulled the gun under the kitchen table. Palacios discovered Cruz under the table loading the weapon. After removing the gun from Cruz, Palacios handcuffed him and read him his rights.

During the trial, Cruz moved to suppress the evidence obtained from his residence, alleging that the search warrant was defective for two reasons. First, Cruz alleged that the affidavit supporting the warrant did not establish probable cause. Second, Cruz asserted that the officers failed to knock and announce their presence before entering the apartment as required by 18 U.S.C. § 3109. The trial court denied Cruz's motion to suppress.

The trial court adopted Cruz's proposed jury instruction on the use of a firearm during drug trafficking. The court instructed the jury that the firearm had to be used "while committing the crime" for Cruz to be guilty. The jury then convicted Cruz for (1) using a firearm during drug trafficking, (2) being a felon in possession of firearms, (3)

possessing heroin with intent to distribute, and (4) distributing heroin.

Cruz alleges that the trial court erred in denying his motion to suppress. Cruz also appeals his conviction for using a firearm during drug trafficking on the ground that the trial court erred in not instructing the jury that the use of the firearm not only had to be "during" the drug trafficking offense, but also had to be "in relation to" the drug trafficking offense.

Finally, Cruz appeals the thirty-year sentence he received for using a firearm during drug trafficking. Cruz maintains that the trial court erred in not requiring that the jury state which firearm, or firearms, supported the sentence.

## II. Analysis

### A. Probable Cause

■ We will not reverse a magistrate judge's determination of probable cause for the purposes of issuing a search warrant absent a finding of clear error. *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993). Considering the totality of the circumstances, the question we must answer is whether "the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *United States v. Castillo*, 866 F.2d 1071, 1076 (9th Cir.1988) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983)).

■ Cruz maintains that the affidavit supporting the search warrant failed to establish probable cause because it contained statements from an informant whose reliability was not established. Cruz argues that the information from the informant that Joseph Perez stored his heroin at Cruz's residence had no indicia of reliability. Therefore, Cruz contends that the trial court erred in denying his motion to suppress for lack of probable cause the evidence obtained from the search of his residence.

■ Probable cause exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332; *United States v. Kerr*, 876 F.2d

---

10. DEA Agent Benavente testified that the purpose of this encounter was to make sure that the residence was, in fact, the residence of Cruz and to isolate him from the house.

1440, 1444 (9th Cir.1989). A tip from a previously reliable informant may establish probable cause. *United States v. Fixen,* 780 F.2d 1434, 1437 (9th Cir.1986). While an anonymous tip would not by itself establish probable cause, independent police corroboration of even innocent activity reported in the tip may support a finding of probable cause. *Gates,* 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13; *Kerr,* 876 F.2d at 1444.

In the instant case, an informant stated that "Joseph Perez told him/her that he did not keep the bulk of his [heroin] supply at his own residence, because he knew that he was being watched by the police … [and] that he keeps his supply at the residence of 'Bone[ ]' near Carbullido School in Barrigada." According to the affidavit, the informant had previously given information that led to the convictions of three people for distributing and manufacturing narcotics. Thus, DEA Agent Anderson established the informant's reliability in the affidavit.

Furthermore, independent police corroboration supported information contained in the informant's tip. The Guam Police Department verified that Joseph Perez's residence was under surveillance. The Guam Police Department also observed Cruz making frequent visits to Joseph Perez's residence. Officer Palacios connected Cruz with the nickname "Bone." Palacios also provided Cruz's address which verified that he lived within one-half mile of Carbullido School in Barrigada. Additionally, "several sources" corroborated the link between Joseph Perez and heroin distribution.

Moreover, the affidavit contained information about Cruz beyond what was revealed by the informant. Officer Palacios stated that Guam police officers had Cruz, as well as Joseph Perez, under surveillance.[11] The surveillance revealed that Cruz was the registered owner of a black Corvette which was involved in an auto accident the week before the affidavit was written. The officer at the scene of the accident stated that Cruz had noticeable track marks on both arms, indicating heroin usage.

The informant's past performance, the independent corroboration of the informant's

tip, and the information learned from surveillance of Cruz, provided the magistrate with a substantial basis for concluding that probable cause existed. Therefore, we affirm the trial court's denial of Cruz's motion to suppress evidence obtained from the search of his residence.

### B. Knock and Announce Requirement

■ We review de novo the trial court's decision that exigent circumstances excused the officers who executed the search warrant from the knock and announce requirement of 18 U.S.C. § 3109. *United States v. Becker,* 23 F.3d 1537, 1539 (9th Cir.1994). We review for clear error the factual findings underlying the trial court's determination. *Id.*

■ Cruz claims that the officers' failure to knock and announce their presence before forcibly entering his residence justified suppressing the evidence obtained from the search. Therefore, Cruz contends that the trial court erred in denying his motion to suppress.

Section 3109 provides:

The officer may break open any outer … door … of a house … to execute a search warrant, if after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109. Where exigent circumstances exist, officers may be excused from the knock and announce requirement. *Becker,* 23 F.3d at 1540. Where an entry causes destruction of property, the exigency must consist of more than a generalized and nonspecific fear. *Id.* (citing *United States v. McConney,* 728 F.2d 1195, 1206 (9th Cir. 1984) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)). In determining the existence of exigent circumstances, one of the factors to which we must look is the specificity of the danger which the officer reasonably believes himself to be facing. *U.S. v. Becker,* 23 F.3d 1537, 1540–41 (9th Cir.1994).

In *United States v. Reed,* 15 F.3d 928 (9th Cir.1994), a plain clothes police officer, who had previously interviewed the defendant during a separate investigation, had a war-

---

11. Nothing in the record indicated that Cruz knew that he was under surveillance. Thus, unlike Joseph Perez, there is nothing to suggest that Cruz would store heroin elsewhere.

rant to search the defendant's residence. In response to the officer's knock, the defendant opened the door, looked at the officer, and immediately closed the door. The officer then forcibly entered the residence dispensing with the knock and announce requirement. This court observed that the officer could have reasonably believed that the defendant closed the door because he recognized the officer. *Id.* at 934. We also explained that the officer knew that the defendant was likely to be armed, that he had a criminal record, and that he might escape. *Id.* Thus, we held that the officer did not act unreasonably in forcibly entering the defendant's residence without knocking and announcing his presence. *Id.*

Similarly, in the instant case, the officers could have reasonably believed that Cruz knew that they were lurking around his residence. Before executing the search warrant, officers tried to isolate and detain Cruz outside his residence with the ruse that an officer needed to discuss with him a traffic accident in which he was involved. This plan, however, failed, and Cruz re-entered his residence. A few minutes later, Eddie Lujan exited Cruz's residence. Agent Benavente testified that he believed that Lujan's purpose in exiting was to ensure that the officers had left. The officers then struggled with Lujan in an effort to detain him before executing the warrant. Agent Benavente testified that, after the ruse and the noisy struggle with Lujan, he thought that the occupants might try to destroy evidence or arm themselves.

Furthermore, as in *Reed,* the officers in the instant case recognized that Cruz was likely to be armed and that he had a criminal record. At the suppression hearing, Agent Benavente testified that he knew that Cruz had shot and killed a suspected informant. *Id.* at 220. The officers knew that Cruz had served an eleven-year sentence for his role in

another murder and that he and Joseph Perez were closely associated. *Id.* at 28. The officers were aware of Joseph Perez's extensive, violent criminal history, his possession of firearms, and his statement that if he were arrested he intended to "go down shooting." *Id.* at 27. DEA Agent Anderson testified that he did not know whether Joseph Perez would be with Cruz at the time the warrants were executed. *Id.* at 32.

Given the circumstances surrounding the search of Cruz's residence, it was reasonable for the officers to believe that the situation before them was dangerous. Cruz's violent criminal history, and his close association with Joseph Perez, who also had a violent reputation, could reasonably have led the officers to believe that Cruz was dangerous. In addition, the officers could have reasonably believed that the noisy struggle with Lujan alerted people inside the residence to the officers' presence and gave the occupants time to dispose of evidence or arm themselves. Thus, we hold that the trial court did not err in holding that exigent circumstances excused the officers' failure to comply with the knock and announce requirement.

### C. Jury Instruction

■ The trial court below adopted the jury instruction proposed by Cruz on using or carrying a firearm during and in relation to a drug trafficking crime. The relevant statute, 18 U.S.C. § 924(c)(1), provides that: "Whoever, during *and in relation to* any ... drug trafficking crime ... uses or carries a firearm" shall be sentenced to imprisonment for an additional five years. 18 U.S.C. § 924(c)(1) (emphasis added). The instruction the court gave on the offense was identical to a version of the instruction provided in the *Manual of Model Criminal Jury Instructions for the Ninth Circuit* § 8.19U.[12] However, we had earlier ruled, in *United States v. Mendoza,* 11 F.3d 126, 128 (9th

12. The instruction the trial court gave the jury provided:

The Defendant[ ] John Velasco Cruz ... [is] charged in Count Seven of the indictment with using and carrying a firearm during and in relation to a drug trafficking crime, in violation of Section 924(c) of Title 18 of the United States Code.

In order for each defendant to be found guilty of that charge, the government must

prove each of the following elements beyond a reasonable doubt:

First, each defendant committed the crimes of conspiracy to distribute narcotics, or of distribution of heroin, or of possession of heroin with the intent to distribute, as charged in Counts One, Three, or Five of the indictment; and second, each defendant knowingly used or carried a Glock–19 nine-millimeter semi-automatic pistol, with silencer attached, or a SWD

Cir.1993), that that version of the model instruction was unconstitutional for failing to state an essential element of the crime. The instruction omitted the "in relation to" language, and we held in *Mendoza* that " '[t]he relation between the firearm and the underlying offense is an essential element of the crime.' " *Id.* at 128 (quoting *United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985)). We concluded that giving the instruction was constitutional error because it "deprive[d] the jury of its fact-finding duty and violate[d] the defendant's due process rights." *Id.* (citing *Carella v. California,* 491 U.S. 263, 265, 109 S.Ct. 2419, 2420, 105 L.Ed.2d 218 (1989)).

Rule 52(b) of the Federal Rules of Criminal Procedure allows the Court of Appeals to correct certain errors that were not brought to the attention of the trial judge. Rule 52(b) provides:

> (b) PLAIN ERROR. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

In *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court created a complete framework to determine the reviewability of errors under Rule 52(b).[13] In *United States v. Gaudin,* 28 F.3d 943, 951–52 (9th Cir.1994) (en banc), *aff'd,* —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (U.S. June 19, 1995), we applied the *Olano* analysis and

found that the failure to instruct a jury on an essential element of a crime cannot be harmless error and was plain error requiring reversal. We apply the same reasoning to the instant case.

The error here, as in *Gaudin,* "cannot be harmless" because

> [w]hen proof of an element has been completely removed from the jury's determination, there can be no inquiry into what evidence the jury considered to establish that element because the jury was precluded from considering whether the element existed at all.

28 F.3d at 951.

In reviewing for plain error, we found in *Gaudin* that the failure to instruct on an essential element of the crime met the *Olano* test for plain error: (1) there was error, (2) it was plain, and (3) the error affected substantial rights because "[i]t . . . affected Gaudin's substantial constitutional right to have a jury . . . decide the facts necessary to establish the existence of an element of the crime." *Gaudin,* 28 F.3d at 952. The error in the instant case likewise meets the *Olano* test for plain error: There is error, it is plain, because the given instruction was previously ruled unconstitutional, and it did affect the "substantial rights" of Cruz to due process because it took from the jury the determination of guilt as to an essential element of the crime.[14]

---

Industries M–11, nine-millimeter pistol, two silencers, or a SKS assault rifle, *while committing the crime.*
Cruz–SER 93–94 (emphasis added).

13. We have held that we do not review jury instructions specifically requested by a defendant. *United States v. Guthrie,* 931 F.2d 564, 567 (9th Cir.1991). *But see People of the Territory of Guam v. Alvarez,* 763 F.2d 1036, 1037–38 (9th Cir.1985) (review of instructions proposed by defense counsel proper when they are "indisputably erroneous"). *Olano,* however, compels a different analysis. *Olano* lays out a framework to be applied to all instances where defendant's counsel has failed to properly preserve error for appeal. *Olano* does not distinguish between errors counsel fails to object to and errors that counsel invites affirmatively. Rule 52(b) does not make this distinction either. Moreover, we believe that an error's reviewability should not only turn on the extent to which the trial counsel invited it, but should also depend on broader issues of fairness and justice. Therefore, we apply the analysis outlined by the Supreme Court

in *Olano* to determine whether the erroneous instruction counsel proposed here is reversible.

14. Under the first prong of the *Olano* test, "[d]eviation from a legal rule is 'error' unless the rule has been waived." *Olano,* 507 U.S. at ——, 113 S.Ct. at 1777. Cruz did not waive his right to due process even though his counsel proposed the erroneous instruction.

The right of a defendant to be found guilty by a jury on each element of the crime charged is a fundamental right of due process that is not easily, if ever, waivable. *See Gaudin,* 28 F.3d at 946 ("[The] right to trial by jury in serious criminal cases [is] 'fundamental to the American scheme of justice'.... The right includes, of course, as its most important element, the right to have the jury . . . reach the requisite finding of 'guilty.'
. . . The prosecution bears the burden of proving all elements of the offense charged....") (quoting *Sullivan v. Louisiana,* —— U.S. ——, —— —— ——, 113 S.Ct. 2078, 2080–81, 124 L.Ed.2d 182

In *Gaudin,* we next evaluated whether the error required reversal, or, as the Supreme Court stated in *Olano,* whether "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano,* —— U.S. at ——, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). In *Gaudin,* we found that the error was sufficiently severe to require reversal. We held that "[w]hen a defendant has not been accorded his [Fifth] and Sixth Amendment rights to a jury determination of the existence of an essential element of the crime ... the error meets [the *Olano* ] standard." *Gaudin,* 28 F.3d at 952. Here, Cruz was deprived of those same constitutional rights to due process because the trial court failed to instruct the jury on an essential element of the crime for which he was charged.[15] We thus conclude that we must correct the error of the trial court, and we reverse.[16]

### III. Conclusion

We REVERSE the conviction of John Cruz for using a firearm during and in relation to drug trafficking, and AFFIRM the convictions for being a felon in possession of a firearm, possessing heroin with intent to distribute, and distributing heroin.

(1993) (quoting *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968)).

Certainly here, Cruz did not "intentional[ly] relinquish[ ]" his right to be found guilty of every element of the crime. *Olano,* —— U.S. at ——, 113 S.Ct. at 1777. (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)); *see also Moran v. Godinez,* 972 F.2d 263, 265 (9th Cir.1992) ("We must indulge in every reasonable presumption against waiver of constitutional rights."). His case could only be hurt by not having the jury hear the "in relation to" language, so it is very likely that his counsel did not even realize the mistake.

**15.** The jury instruction was plainly erroneous at the time it was given. We do not reach the question of whether a new trial is required where an instruction, although valid under circuit authority at the time of trial, is later held unconstitutional.

**16.** Though we need not reach this issue to resolve Cruz's appeal, because this case will be retried, we note that the trial court should have required the jury to submit a special verdict as to which firearm, or firearms, Cruz used in connection with the drug trafficking offense.