106 F.3d 410
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marvin Gene RIVERS, Defendant-Appellant.
 No. 95-10490.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1996.
Decided Dec. 24, 1996.
 
 1
 Before: FLETCHER, FARRIS, and HALL, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Marvin Gene Rivers appeals his conviction for armed bank robbery under 18 U.S.C. §§ 2113(a) and (d). Rivers claims that the district court erroneously denied Rivers' motion to suppress evidence seized at his home by police who did not knock before entering and to whom he did not give consent to search. Rivers also claims that the prosecutor's reference during closing arguments to Rivers' failure to present alibi witnesses, coupled with misstatements by the district judge in charging the jury, violated Rivers' right to due process. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 I. FACTS
 
 4
 Rivers was arrested in his home by FBI agents who had a warrant for Rivers' arrest. He subsequently was indicted for the armed bank robbery of a Great Western Bank in Fresno, California. Rivers moved to suppress evidence seized at his apartment at the time of his arrest. The district court held an evidentiary hearing at which the arresting agents testified for the government and Rivers, his girlfriend, and a neighbor testified for Rivers.
 
 
 5
 According to the agents, they waited outside Rivers's building until they determined that he was at home. They then agreed to go up to Rivers' apartment, knock on the door, and arrest him. When the agents reached Rivers's apartment, the door was open. They saw Rivers standing in the living room. They told Rivers he was under arrest and entered the apartment through the open door. They handcuffed Rivers in the living room.
 
 
 6
 According to Rivers and his girlfriend, the door to the apartment was closed. Unpreceded by any knock or announcement, the door burst open and law enforcement agents entered. They ordered Rivers's girlfriend to sit on the couch, ordered Rivers to drop the cellular phone and day planner he was holding and to "grab the wall," handcuffed Rivers, and arrested him.
 
 
 7
 After arresting Rivers and securing the apartment, the agents seized the baseball cap Rivers was wearing. They searched the apartment and seized a quilted, plaid, flannel shirt and the day planner. According to the agents, Rivers orally consented to this search, then was given an FBI consent form to read and consented again. According to Rivers, he did not consent to the FBI search and refused to sign the consent form.
 
 
 8
 The district court denied Rivers's motion to suppress, stating that he did not believe Rivers's witnesses. The district court held that entry through an open door does not violate the federal knock-and-announce law, 18 U.S.C. § 3109. The district court did not address Rivers's claim that he did not consent to have his apartment searched.
 
 
 9
 At his jury trial, Rivers presented an alibi defense, claiming that he was in Los Angeles on the date of the robbery. The jury found Rivers guilty of armed bank robbery and the district court sentenced him to 125 months in prison.
 
 II. KNOCK-AND-ANNOUNCE
 
 10
 We review de novo the mixed question of law and fact of whether the FBI's departure from the statutory knock-and-announce requirements was justified. United States v. Perez, 67 F.3d 1371, 1383 (9th Cir.1995), reh'g en banc granted, 77 F.3d 1210 (9th Cir. March 11, 1996). However, we review for clear error the district court's factual finding that Rivers' door was open. Id.
 
 
 11
 Before forcibly entering a dwelling to execute a warrant, federal law enforcement agents must give notice of their authority, announce the purpose of their entry, and be refused admittance. 18 U.S.C. § 3109.[1] Section 3109 codifies the common law "knock and announce" rule which acknowledges the sanctity of the home and protects citizens and law enforcement officers from physical harm or property damage resulting from unannounced entries. See Wilson v. Arkansas, 115 S.Ct. 1914, 1916-17 (1995); United States v. Ramirez, 91 F.3d 1297, 1300 (9th Cir.1996); United States v. Becker, 23 F.3d 1537, 1540 (9th Cir.1994).
 
 
 12
 We have held that police may enter an open door without knocking to execute a warrant. United States v. Valenzuela, 596 F.2d 1361, 1365-66 (9th Cir.), cert. denied, 444 U.S. 865 (1979); see also Steagald v. United States, 451 U.S. 204, 217 n. 11 (1981) ("an open outer door was apparently regarded as the equivalent of a consent of the occupant for the constable to enter the home and conduct a search."); United States v. Shaibu, 920 F.2d 1423, 1427 (9th Cir.1990) (noting that open door may "affect the range of permissible action for police possessing a warrant"). The district court's finding that Rivers's door was open was not clearly erroneous. On the basis of that finding, the district court properly denied Rivers's motion to suppress the evidence seized following the agents' entry.
 
 III. CONSENT TO SEARCH
 
 13
 Rivers argues that even if the agents were justified in entering his apartment to execute the arrest warrant, their subsequent search of the apartment was illegal. The district court did not discuss the consent issue in its oral or written denials of Rivers' motion to suppress. The court stated, however, that it accepted the government's version of the facts. We therefore review for clear error the district court's implied finding that Rivers consented to the search of his apartment. United States v. Perez, 37 F.3d 510, 514 (9th Cir.1994). We must view the evidence regarding consent in the light most favorable to the district judge's decision. United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1988).
 
 
 14
 We recognize that "[t]he existence of consent to a search is not lightly to be inferred." United States v. Patacchia 602 F.2d 218, 219 (9th Cir.), as amended 610 F.2d 648 (9th Cir.1979). The government must prove not only that Rivers consented, but that his consent was effective. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Shaibu, 920 F.2d at 1426. Effective consent must be voluntary. Castillo, 866 F.2d at 1082. In determining whether the defendant voluntarily consented to the search, the court must assess the totality of the circumstances. United States v. Morning, 64 F.3d 531, 532 (9th Cir.1995); Castillo, 866 F.2d at 1082.[2]
 
 
 15
 Here, the district court apparently did not consider the effectiveness of Rivers's consent. The question of voluntariness is inherently factual and may not be resolved by the court of appeals when it was not addressed by the district judge. United States v. Carbajal, 956 F.2d 924, 930-31 (9th Cir.1992) (appellate court may not find in the first instance that consent was voluntary or involuntary; to do so would violate FRCP 12(e)).
 
 
 16
 We give substantial deference to the district judge's apparent acceptance of the agents' testimony that Rivers orally consented to the search, was given a consent form to read, and again consented. See United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991). On this evidence, the district court's finding that Rivers consented was not clearly erroneous.
 
 
 17
 Furthermore, we need not reverse because the district court failed to determine whether Rivers voluntarily consented. A violation of the Fourth Amendment does not mandate reversal of a conviction if the error was harmless beyond a reasonable doubt. See Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986); United States v. O'Connor, 737 F.2d 814, 821 n. 6 (9th Cir.1984).
 
 
 18
 The baseball cap was seized from Rivers' person in the course of a valid search incident to a lawful arrest and therefore was admissible on an independent basis. See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). The only evidence seized in the allegedly consensual search was the plaid flannel shirt and the day planner. Two witnesses testified that the shirt was similar to that worn by the robber. Money orders for which receipts were found in the day planner were identified as having been issued in Rivers' name on the day of the robbery. The record includes extensive evidence of Rivers' guilt in addition to these items, including eyewitness identifications, handwriting comparisons, and statements by Rivers inconsistent with his alibi. The exclusion of the shirt and day planner would not have negated any element of the crime or significantly weakened the government's case against Rivers. Thus, even if Rivers did not consent to the search of his apartment, the admission of the fruits of that search was harmless error.
 
 IV. DUE PROCESS
 
 19
 Rivers claims that he was denied due process because the prosecutor referred in closing argument to Rivers' failure to produce any witness who saw him in Los Angeles on the date of the robbery, and because the district judge made two misstatements in charging the jury. Because Rivers' counsel did not object at trial to the prosecutor's comments or the judge's misstatements, we review their admission for plain error. United States v. Williams, 989 F.2d 1061, 1071-72 (9th Cir.1993).
 
 
 20
 The Fifth Amendment protection against self-incrimination prohibits the prosecutor from commenting on the defendant's failure to testify. Griffin v. California, 380 U.S. 609, 615 (1965). However, the prosecutor may comment on the defense's failure to present alibi witnesses "so long as it is not phrased to call attention to the defendant's own failure to testify." United States v. Fleishman, 684 F.2d 1329, 1343 (9th Cir.1982).
 
 
 21
 Rivers testified, thereby eliminating any potential violation of his privilege against self-incrimination. See Castillo, 866 F.2d at 1084 (though admissible, comments on the defendant's failure to produce witnesses may lead jurors to speculate on the defendant's failure to testify). Moreover, the prosecutor did not refer to Rivers' own failure to produce evidence, but rather to the absence of testimony by "anyone from Los Angeles ... that Mr. Rivers was there on February the 17th." In United States v. Mares, 940 F.2d 455, 461 (9th Cir.1991), we distinguished comments directed at the defense counsel's arguments from comments referring to the defendant himself. The prosecutor is entitled to highlight weaknesses in the defense case and to challenge the defense to explain unfavorable facts or inferences. Id. Furthermore, the district court's prompt admonishment of the prosecutor and reminder to the jury of the government's burden of proof diminished any potential prejudice from the prosecutor's comment. See id.
 
 
 22
 In charging the jury, the district judge made two misstatements regarding the burden of proof. However, the judge corrected his misstatements and properly instructed the jury on the elements of armed bank robbery and the government's burden of proving each element of the crime beyond a reasonable doubt. The judge's misstatements were mere "slips of the tongue". Neither the judge's misstatements nor the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Duckett v. Godinez, 67 F.3d 734, 743 (9th Cir.1995), cert. denied, 116 S.Ct. 1549 (1996).
 
 V. CONCLUSION
 
 23
 The district court's denial of Rivers's motion to suppress was not clearly erroneous. Neither the prosecutor's comments nor the judge's misstatements prejudiced Rivers' trial.
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 3109 provides in relevant part:
 The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance....
 18 U.S.C. § 3109. Section 3109 applies to the execution of arrest warrants as well as search warrants. Miller v. United States, 357 U.S. 301, 313 (1958).
 
 
 [2]
 Relevant factors in determining whether consent is voluntary include: (1) whether the person was in custody; (2) whether the law enforcement officers had their guns drawn; (3) whether the person had received Miranda warnings; (4) whether the officers told the person he had a right not to consent; and (5) whether the officers told the person that they could obtain a search warrant. Castillo, 866 F.2d at 1082 (citations omitted). The person's refusal to sign a waiver form is not conclusive proof that no waiver was given. Id. (citing North Carolina v. Butler, 441 U.S. 369, 374-75 (1979))